Derrick TAYLOR, Plaintiff–Appellant,

v.

A. RODRIGUEZ, I/O;  Remi Acosta, I/O;  Shipman, Captain, I/O;  Meyers, I/O;  Soto, Lieutenant, I/O, Defendants–Appellees.

Docket No. 99–0280.

United States Court of Appeals,
Second Circuit.

Submitted May 12, 2000.

Decided Jan. 18, 2001.

Derrick J. Taylor, Somers, Connecticut, submitted a brief as pro se Plaintiff–Appellant.

Antoria D. Howard, Assistant Attorney General, Hartford, Connecticut (Richard Blumenthal, Attorney General, Hartford, Connecticut, of counsel), submitted a brief for Defendants–Appellees.

Before: WALKER, Chief Judge, KEARSE, and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Derrick Taylor, currently an inmate within the Connecticut state prison system, appeals *pro se* and *in forma pauperis* from a grant of summary judgment by the United States District Court for the District of Connecticut (Squatrito, J.), dismissing his civil rights suit brought under 42 U.S.C. § 1983. Defendants, in whose favor summary judgment was granted, are Captain A. Rodriguez, Office of the Deputy Commissioner, Remi Acosta, Warden of Garner Correctional Institution, Captain Shipman, Captain of Security of Garner Correctional Institution, Lieutenant Migdalia Soto, Disciplinary Hearing Officer, and Captain Meyers, Close Custody Unit Manager. Captain Meyers is not a party to this appeal.

Taylor alleges various prison officials deprived him of his rights by placing him in close custody, a housing status involving severely restricted privileges, for an indefinite period of time. When Taylor filed his appellate brief, he remained in close custody. Key among his claims is his contention that due process was denied him in an April 1997 hearing because the notice containing the charges against him and the procedures followed at the hearing were insufficient to protect his constitutional rights.

In denying plaintiff's motion for summary judgment, the district court found plaintiff's proffer of proof inadequate to determine whether he had a liberty interest in being free from close custody. The court further stated that plaintiff provided very little information regarding the conditions in the general prison population that would allow it to make a finding that close custody constituted an "atypical and significant hardship" within the meaning of *San-*

*din v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In granting defendants' cross-motion for summary judgment, the district court also concluded that Taylor received all the process due him had a liberty interest existed. Because we disagree with some of these conclusions, we remand the case for further proceedings.

## BACKGROUND

In April 1997 Taylor was incarcerated at the Garner Correctional Institution in Connecticut. On April 15 of that year, he was notified that a hearing would be held to determine whether he was a member of a security risk group that constituted an institutional safety threat. A safety threat member is an inmate whose association with a security risk group jeopardizes the safety of the institution. The notice served on Taylor stated that the reasons for the hearing were "past admission to outside law enforcement about involvement with Latin Kings/recent tension in B–Unit involving gang activity/statements by independent confidential informants."

Taylor filed a Freedom of Information Act (FOIA) request on April 16 seeking disclosure of statements and evidence provided by confidential informants to be used against him. Plaintiff's FOIA request was denied on April 21 because the information sought was exempt from disclosure. That same day, plaintiff was placed on Administrative Detention status pending the outcome of the hearing that was held on April 22.

Lt. Migdalia Soto presided at the hearing, during which Taylor again requested the identity of the confidential informants and insisted they testify. The hearing officer denied the request to protect the informants' safety. She also denied plaintiff's request for a continuance to obtain a private attorney. Although Taylor refused an advocate at the hearing, one had previously been appointed for him and was present.

Taylor testified and presented witness statements obtained by his advocate. The statements presented concerned an unrelated prison disciplinary incident. Lt. Soto ultimately determined that, based on the confidential information and an incident that occurred in July 1994 at Hartford Correctional Center, no doubt existed that plaintiff was still involved with the Latin Kings. As a result, Taylor was designated a safety threat member of a security risk group.

Such members at Garner are housed in the close custody unit, designed to segregate inmates identified as safety threats while providing programs and incentives to sever their ties to the security risk group, in this case the Latin Kings. The program begins with an inmate's assignment to Phase I, the most restrictive close custody status. Inmates are then evaluated for acceptance into Phases II and III, each involving additional privileges. Upon completion of Phase III, an inmate may be considered for release into the general population.

An important condition of advancement from Phase I to Phase II is that an inmate sign a "Letter of Intention" to sever ties with all security risk groups. Taylor refused to sign such a letter. As a result, he remained in Phase I close custody from April 1997 at least until he filed his appellate brief on January 24, 2000, even though Hearing Officer Soto recognized that he had formally renounced his membership in the Latin Kings on March 24, 1994. She further acknowledged Taylor's insistence at the April 1997 hearing that he no longer had any contact with that group.

Inmates who do not complete the close custody program within 12 months of entering the Unit may be transferred to Northern Correctional Institution, where their security level is increased. After less than five months, Taylor was in fact transferred to Northern in September 1997, and placed in more restrictive administrative segregation. He has since "graduated" from the program at Northern, been re-

turned to Garner, and transferred yet again to Northern, although the reason for this last transfer is not clear from the record.

After unsuccessfully pursuing various appeals and grievances within the prison system, Taylor in September 1997 brought this suit *pro se* pursuant to 42 U.S.C. § 1983. His complaint alleges (1) he should have been accorded full due process rights at the April 1997 hearing; (2) he should have been notified of the actual charges against him; (3) the hearing officer should hold a higher rank than lieutenant; (4) assignment to close custody should be for a definite period of time; (5) security risk group affiliation is too vague a charge to defend against; (6) all lost good time credit should be returned; and (7) forcing inmates to sign a renunciation as a condition of release from close custody violates their Fifth Amendment rights. Although not framed in the complaint as a separate cause of action, plaintiff further asserts his First Amendment right to free exercise of his religion (Orthodox Judaism) was infringed by placement in close custody.

After the district court denied defendants' motion to dismiss on December 7, 1998, both sides moved for summary judgment. Taylor also moved in March 1999 for a temporary restraining order to require defendants to remove him immediately from close custody.

In a decision dated August 24, 1999 and entered the following day, the district court denied Taylor's motion for summary judgment on the due process claims, finding that plaintiff provided insufficient evidence to make a threshold showing that "his confinement in close custody constitutes an atypical and significant hardship." With respect to plaintiff's contention that a classification hearing officer should hold a rank higher than lieutenant, the district court found plaintiff submitted nothing to suggest Lt. Soto did not fairly review the evidence at the hearing. The trial court also dismissed the First Amendment free exercise claim because Taylor had another action pending on this issue. Finally, it dismissed Taylor's Fifth Amendment claim on two grounds: first, with no proof indicating that signing the renunciation form was to be accompanied by *Miranda* warnings, the statements could not be used against him; second, plaintiff lacked standing to assert a Fifth Amendment claim absent an imminent threat of prosecution.

The district court then considered defendants' cross-motion for summary judgment, assuming for purpose of the motion only that Taylor's confinement in close custody constituted an atypical and significant hardship as required by *Sandin*. It ruled that Taylor was provided with adequate notice of the charges against him and that defendants' decision to place him in close custody was supported by "some evidence." Accordingly, summary judgment was granted to defendants. Taylor's motion for a temporary restraining order was denied as moot.

## DISCUSSION

Taylor appeals the grant of summary judgment to defendants, which we review *de novo*. See *Wright v. Coughlin*, 132 F.3d 133, 137–38 (2d Cir.1998). Such relief is appropriate only if, viewing the facts in the light most favorable to the nonmoving party, there exists no genuine issue of material fact to be tried. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### I Taylor's Due Process Claims

A claim alleging procedural due process violations must show that plaintiff enjoyed a protected interest, and defendants' deprivation of that interest occurred without due process of law. See *Tellier v. Fields*, 230 F.3d 502, 511 (2d Cir.2000). We begin by addressing the second element. For if the district court correctly concluded that Taylor received all the process due him, then Taylor's showing of a

protected liberty interest would not save his cause of action from dismissal. *See Welch v. Bartlett,* 196 F.3d 389, 394 n. 3 (2d Cir.1999).

## A. ·Adequacy of Process Accorded Taylor

### 1. *Notice*

■ The district court determined that "conditions in close custody are similar to those in administrative segregation." Plaintiff does not challenge this conclusion, and in fact asked in his complaint that close custody be recognized as administrative segregation. The Supreme Court requires that, assuming the existence of a liberty interest, a prisoner placed in administrative segregation be provided "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms,* 459 U.S. 460, 476, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *accord Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995).

In her affidavit in support of summary judgment, Hearing Officer Soto states that she conducted the hearing in accordance with Connecticut Department of Correction Administrative Directive 6.14 (Security Risk Groups) and Administrative Directive 9.5 (Code of Penal Discipline).[1] Plaintiff does not urge that any other regulation should have been controlling. Under these state regulations, Connecticut state prisoners being considered for transfer to close custody must receive notice of the charges against them at least 24 hours prior to the hearing, have a meeting with an advocate 24 hours before the hearing, and if the inmate requests such assistance, a thorough investigation by the advocate, an opportunity to appear, present evidence and call witnesses. The record of the hearing must contain a written statement including "the offense charged, the plea of the accused inmate, the disposition of witnesses, a summary of witness testimony, the finding and the reasons for it, the sanction(s) imposed and the reasons for it and any other noteworthy information about the hearing." Connecticut Dep't of Correction Admin. Directive 9.5 at 12–17. These processes are in accordance with Supreme Court precedent. *See Hewitt,* 459 U.S. at 466 n. 3, 103 S.Ct. 864.

Case law has not expressly set out what is to be included in a notice with respect to administrative segregation, but since such standards have been articulated with respect to disciplinary segregation, we see no reason to establish separate standards for each. The Supreme Court has held that while prisoners are entitled to the protection of procedural due process in the context of a disciplinary hearing, "the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The full panoply of rights due a defendant during a criminal trial are not available in a prison disciplinary hearing. *See id.* Yet, as explained in *Wolff,* at least "the minimum requirements of procedural due process appropriate for the circumstances must be observed." *Id.* at 558, 94 S.Ct. 2963.

■ Minimum requirements, we think, include a notice that is something more than a mere formality. *See Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993). The effect of the notice should be to compel "the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged" to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges

---

1. The copy of Administrative Directive 9.5 that defendants supplied as part of the record is a recent version that became effective on March 15, 1999, well after Taylor's hearing. Because plaintiff has not objected, we assume this version does not differ materially from the version in effect at the time of the hearing.

and not be made to explain away vague charges set out in a misbehavior report. *McKinnon v. Patterson,* 568 F.2d 930, 940 n. 11 (2d Cir.1977).

■ Plaintiff acknowledges he received written notice of the charges. His challenge is directed towards the district court's finding that it was sufficient. The notice indicated Taylor was being considered for close custody based on his "past admission to outside law enforcement about involvement with [the] Latin Kings," "recent tension in B–Unit involving gang activity," and "statements by independent confidential informants." Taylor insists such information was too vague to allow him to prepare an adequate defense to the charges.

We agree. The notice does not contain specific allegations of conduct indicating current involvement with the Latin Kings, nor does it indicate which of his actions while incarcerated formed the basis for believing him to be a member of a security risk group. As noted, his FOIA request for disclosure of evidence and his request for the hearing officer to describe the "tension" were denied on the basis of confidentiality. Thus, Taylor had before him only these vague, unspecific charges to defend against. This sort of notice falls short of its function as set forth in *Wolff. See* 418 U.S. at 564, 94 S.Ct. 2963 ("Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact."). Even in cases involving administrative segregation based upon a prisoner's membership in a gang, sufficient notice cannot simply recite vague or conclusory allegations of "recent tension ... involving gang activity." Rather, to be sufficient, notice must inform the defendant of more specific facts underlying the allegation that he is suspected of gang membership, for example, a report of contact with known gang members. Specific facts underlying allegations of current member involvement were especially important here, because Hearing Officer Soto expressly acknowledged Taylor's insistence that he had formally renounced membership in the Latin Kings on March 24, 1999, and that he no longer had any contact with the group.

■ Although the hearing requirement for placement in administrative segregation may be met by an "informal, nonadversary" proceeding, *Hewitt,* 459 U.S. at 476, 103 S.Ct. 864, it is a bedrock requirement of due process that such hearing be held "at a meaningful time and in a meaningful manner," *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A hearing is not "meaningful" if a prisoner is given inadequate information about the basis of the charges against him. A prisoner should not, as Taylor was, have to guess what conduct forms the basis for the charges against him. *See Brown v. Plaut,* 131 F.3d 163, 172 (D.C.Cir.1997) ("If [an inmate] was not provided an accurate picture of what was at stake in the hearing, then he was not given his due process.").

Here we have no doubt that plaintiff misunderstood what charges were leveled against him. For example, the plaintiff testified, and introduced witness testimony, on matters concerning a wholly unrelated disciplinary incident, even though he had been assigned an advocate to assist in preparing a relevant defense. Hence no remand for factual findings is necessary. *Cf. id.* at 171–72 (remanding case to determine whether plaintiff inmate understood charges against him). The notice, the contents of which are not in dispute, was deficient as a matter of law.

We must add that in questioning the sufficiency of the notice, we do not mean to imply that prison officials should have divulged the identity of the confidential informants, or that Taylor was entitled to have the informants testify as witnesses. *Cf. Giakoumelos v. Coughlin,* 88 F.3d 56, 61–62 (2d Cir.1996) (reasoning that confidential informant's testimony in prison disciplinary hearing need not be disclosed

because "the requirements of prison security are unique").

## 2. *Evidence Supporting the Determination*

■ Although the issue of notice is sufficient to warrant a remand, we are also troubled by the district court's conclusion that the decision supporting Taylor's close custody designation was based on "some evidence." *See Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (holding that to satisfy due process, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"); Connecticut Dep't of Correction Admin. Directive 6.14, ¶ 9B (incorporating a "some evidence" standard).

In the "Inmate Security Risk Group Member/Safety Threat Member" determination form, Hearing Officer Soto recites that her conclusion is based in part on the confidential information received from informants. The form also indicates that she relied upon an incident on July 27, 1994 when Taylor was housed at Hartford Correctional Center. No details about that incident are included in the findings. Further, while the hearing officer refers to attached statements in connection with the confidential information and the Hartford incident, no such statements were attached to the copies of the determination form filed with the district court.

To support a finding based on confidential information, we have held that an informant's testimony will suffice at least where there has been some examination of indicia relevant to an informant's credibility. *See Giakoumelos,* 88 F.3d at 61. Requiring an independent credibility assessment ensures not only a fair hearing and discipline based on reliable evidence, but also places a minimal burden on prison officials conducting such hearings, with the assurance that judicial review is available.

In the case at hand, no such assessment is included in the determination form regarding the reliability of the confidential informants upon whose statements Lt. Soto based Taylor's placement into close custody. Nor does the form indicate that she reviewed the confidential informants' statements. While Capt. Shipman's affidavit on defendants' summary judgment motion states he did determine reliability, the determination form lists as witnesses neither Shipman nor any prison official who had contact with the confidential informants. Shipman's affidavit submitted to the district court two years after Taylor's hearing does not serve as a suitable basis for making a credibility determination.

Moreover, even though Lt. Soto also relied upon the details of an incident involving plaintiff at Hartford Correctional Center, the statement to which she refers was not submitted to the district court or to us. Without such documentation, combined with the absence of any contemporaneous findings as to the reliability of the confidential informants, we are left to speculate how the decision to place Taylor in close custody was supported by "some evidence" as required by federal law and state regulations. Thus, the district court's grant of summary judgment to defendants was improper for this reason as well.

## B. *Atypicality of Confinement*

■ Despite our conclusion that Taylor did not receive the process that was due, he cannot succeed on his claims if he fails to establish a protected liberty interest. *See Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998). In recognizing that states may create liberty interests, the Supreme Court has, in the context of prisoner rights, limited those interests to freedom from restraint that "imposes atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293. *Sandin* applies to incidents of both administrative and disciplinary segregation. *See Arce,* 139 F.3d at 334–35.

The inquiry into the severity of confinement assesses whether differences in conditions between a restrictive housing status and the general population or other restrictive statuses constitute a significant hardship. *See Welch,* 196 F.3d at 393; *Arce,* 139 F.3d at 336; *Wright,* 132 F.3d at 136; *Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997). The trial court in the instant case determined that Taylor submitted insufficient evidence to establish an atypical and significant hardship. The evidence offered included the following.

First, plaintiff provided a copy of the Garner Correctional Institution Close Custody Status Handbook. Within this handbook is information detailing differences in conditions between Phase I close custody and Phases II and III. Second, plaintiff submitted a sworn declaration in support of his motion for a temporary restraining order that lists various "hardships" he experienced in close custody relative to inmates in the general population. While this document is not technically a part of Taylor's summary judgment papers, the district court nonetheless considered it, and faulted Taylor for failing to provide supporting documentary evidence or affidavits. Taylor's declaration however, can form a proper basis to support his summary judgment motion. *See Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999) (holding that an inmate's testimony alone, if found credible and persuasive by trier of fact, may establish atypical confinement).

Equally important, we have emphasized since the time of the district court's decision that the duration of the claimed deprivation is to be taken into account in deciding whether the prisoner's confinement constitutes an atypical and significant hardship. *See id.* ("Both the conditions [of confinement] and their duration must be considered...."); *Welch,* 196 F.3d at 393 ("[T]he duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical."). We recently found that 305 days confine-

ment under normal segregated housing unit conditions met the *Sandin* standard for atypicality. *See Colon v. Howard,* 215 F.3d 227, 231–32 (2d Cir.2000). While in *Sealey* we held that a 101–day confinement in highly-restrictive segregated housing in New York was not an atypical confinement, *see* 197 F.3d at 589–90, in *Colon* we recognized that a confinement of less than 101 days could meet the *Sandin* standard on a more fully developed record, *see* 215 F.3d at 232 n. 5.

It is undisputed that at a minimum, plaintiff spent almost five months in close custody before his complaint was filed. Aggregative sentences of 125–288 days are "relatively long," requiring a district court to articulate specific findings before determining whether such confinement is atypical or significant. *See Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000). It is also undisputed that plaintiff remained in close custody pursuant to an indefinite term of confinement from the time he filed his complaint in September 1997 through the briefing on the summary judgment cross-motions in May 1999. Moreover, if Taylor's appellate brief is to be believed, he further remained in close custody through January 2000, when the brief was filed, and he may remain there to this day.

The continuing, indefinite duration of Taylor's term of confinement to close custody complicates the analysis contemplated by *Sandin* because it calls into question the precise length of confinement that should be considered. Prior cases addressing length of confinement are distinguishable in that they involved situations where either (a) the inmate's indefinite term was completed prior to the initiation of the federal lawsuit, or else (b) the inmate's sentence was determinate from the outset even though it may have been completed only after the filing of the federal complaint. *See, e.g., Sims,* 230 F.3d at 18–19 (detailing the lengths of sentences imposed); *Colon,* 215 F.3d at 229 (plaintiff served 305 days in special confinement before initiating federal suit); *Sealey,* 197

F.3d at 581 (plaintiff served 153 days before starting lawsuit); *Welch,* 196 F.3d at 391 (inmate served 90–day disciplinary sentence before filing federal complaint); *Ayers v. Ryan,* 152 F.3d 77, 80 (2d Cir. 1998) (explaining that after inmate's sentence in segregated housing was reduced to 180 days, inmate filed § 1983 complaint "several months later"); *Arce,* 139 F.3d at 331–32 (plaintiff completed a total of 18 days in administrative housing before bringing suit more than two years later); *Brooks,* 112 F.3d at 48 (inmate completed 180–day sentence in keeplock before filing complaint in federal court); *Frazier v. Coughlin,* 81 F.3d 313, 316 (2d Cir.1996) (per curiam) (inmate was removed from Close Supervision Unit after complaint was filed, following eleven months' confinement); *Rodriguez,* 66 F.3d at 474 (noting that plaintiff spent a total of three days in administrative confinement).

While we do not rule out the possibility that the entirety of plaintiff's confinement should ultimately be considered, we believe the issue presents sufficient difficulties to merit additional briefing from the parties and full consideration by the district court in the first instance. We must add that the district court may be able to avoid the issue altogether, if the duration question proves to be resolvable on alternative grounds. For example, the district court may conclude that even the relatively limited term served by Taylor prior to filing his complaint in September 1997 constituted an atypical and significant hardship.

Moreover, the parties do not dispute that Taylor has not completed the Phase I program due to his refusal to sign a renunciation statement. Although Taylor has argued that being required to sign such a statement violates his Fifth Amendment rights, as we explain below that claim has been abandoned on appeal. Therefore, the question arises to what extent, if any, Taylor is responsible for the length of his confinement to close custody. *See Sealey,* 197 F.3d at 587 ("[W]e must focus only on the interval during which Defendant ... is responsible."). If the district court concludes on remand that Taylor's refusal negated defendants' responsibility for his continued confinement, then that conclusion could also resolve the duration question.

Because the district court erred in concluding that Taylor provided insufficient evidence on which to make the atypicality determination, the denial of summary judgment for Taylor on this basis was inappropriate. On remand, it must undertake a *Sandin* analysis, considering both the duration of Taylor's segregation in close custody and the severity of his confinement compared to other categories of confinement. When conducting this analysis, the district court should "identify with specificity the facts upon which its conclusion is based." *Wright,* 132 F.3d at 137; *accord Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999) (per curiam); *Brooks,* 112 F.3d at 49.

We decline to make this determination in the first instance because the question of atypicality requires a fact-intensive inquiry that the trial court is in a better position to make. *See Ayers,* 152 F.3d at 83. Before undergoing such analysis however, it may consider seeking further briefing on the *Sandin* issue. In his appellate brief, Taylor included a more detailed comparison of prison conditions than he submitted in connection with the motions below.

We also leave for the district court the issue of whether plaintiff has satisfied the second part of his burden in showing a protected liberty interest. We require plaintiffs such as Taylor not only to establish an atypical and significant hardship, but also to show that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement." *Frazier,* 81 F.3d at 317.

## II Taylor's Other Claims

Taylor includes in his appellate brief no argument regarding either his claim that

requiring him to sign the renunciation form violated his right against self-incrimination under the Fifth Amendment, or his claim that an officer ranked higher than lieutenant should preside at a classification hearing. Consequently, we deem these claims abandoned. *See Arce,* 139 F.3d at 337. We turn then to the other claims discussed in Taylor's *pro se* appellate brief.

## A. *Fourth Amendment Claim*

Taylor argued in his submissions to us and the district court that the provisions of Administrative Directive 6.14 § 20 violate his right to privacy under the Fourth Amendment. This section provides that when a member of a security risk group is scheduled for release, the prison is to notify the relevant outside law enforcement authorities and provide a profile of the inmate. The district court made no mention of this claim in its opinion, perhaps because plaintiff did not expressly include this cause of action in his complaint. On remand, Taylor should be afforded the opportunity to amend his complaint to add this cause of action expressly and obtain a ruling from the district court.

## B. *First Amendment Free Exercise Claim*

■ The district court dismissed Taylor's claim that confinement in close custody violated his right to free exercise of his religion because it determined that a separate action was pending on this question. The trial court reviewed the complaint in *Taylor v. Acosta,* No. 3:97CV1972 (D. Conn. filed Sept. 16, 1997), a case filed the same day as the instant case, and found that the religion claims contained in both actions are the same. In administering its docket, a district court may dismiss a second suit as duplicative of an earlier suit, *see Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000), unless there are special circumstances, not present here, that favor giving priority to the second, *see Motion Picture Lab. Technicians Local 780 v.*

*McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986).

■ Our review of the complaints in *Taylor v. Acosta* and this case substantiates that both claims concern whether Taylor was deprived of his access to religious services, materials and meals particular to his religion. Since *Taylor v. Acosta* was assigned docket number 97CV1972 and the instant case was assigned docket number 97CV1973, we know *Acosta* was filed first. In the present circumstances we see no abuse of discretion, *see Curtis,* 226 F.3d at 138, in the district court's decision to dismiss Taylor's First Amendment claim from the proceeding below. We note however, that to the extent supported by evidence, it would be proper as an element of the *Sandin* atypicality analysis to compare the restrictions on Taylor's exercise of religion while in close custody to the restrictions placed on Orthodox Jews in the general population.

## CONCLUSION

The grant of summary judgment in favor of defendants is affirmed to the extent it dismisses plaintiff's First Amendment claims, vacated to the extent it finds no basis for a due process or Fourth Amendment claim, and the case is remanded for further proceedings consistent with this opinion.

Insofar as the district court did not consider arguments raised by defendants regarding lack of personal involvement, Eleventh Amendment sovereign immunity and qualified immunity, those issues may be considered upon remand. Moreover, we reinstate plaintiff's motion for a temporary restraining order since it was dismissed as moot. Finally we suggest, as we have before in remanding a *Sandin* issue, that the district court consider appointing counsel for the *pro se* plaintiff to ensure a full presentation of the differences between close custody and other forms of confinement. *See Welch,* 196 F.3d at 395 n. 5.

Affirmed in part, vacated in part, and remanded.