IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

## CEDRIC FRANKLIN v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 00-2094-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2001-00279-COA-R3-CV - Filed November 8, 2001**

---

A prison disciplinary board found a minimum security prisoner to be guilty of violation of state law. The prisoner filed a Petition for Writ of Certiorari, claiming that the board had denied him due process. The trial court dismissed the petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Cedric Franklin, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Dawn Jordan, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. FIVE BOTTLES IN A BLACK PLASTIC BAG

This case involves a disciplinary proceeding against Cedric Franklin, a minimum security prisoner at West Tennessee State Prison in Henning. The events from which the proceeding arose occurred on April 4, 2000. According to the disciplinary report by Correctional Officer Charles Ring, the officer was driving down a road on the prison grounds at 7:00 a.m. on that day, and he noticed a black plastic bag lying on the side of the road. Officer Ring opened the bag, and found it to contain four plastic bottles of clear liquid and one bottle of amber-colored liquid. The bottles had a strong smell of alcohol when they were opened. Officer Ring brought the bottles to his lieutenant, who had him replace the bottles with rocks, and return the bag to where he found it.

Sergeant Boyd was assigned to watch the bag. He notified Officer Ring by radio that two prisoners on a tractor pulling a cart had stopped and picked up the bag. The two prisoners were

Cedric Franklin and Robert Brown. The tractor proceeded towards the recycle area, where another prisoner, Gary Reeves, emerged from the recycle building, and moved towards the tractor. Officer Ring stopped the tractor and asked Mr. Franklin where the bag was. He said that he didn't have it, but Sergeant Boyd located it near the cardboard area. Mr. Franklin then said that Mr. Reeves had told him to pick the bag up. Franklin, Reeves and Brown were charged with violation of state law, and placed in segregation pending a disciplinary hearing.

Mr. Franklin's disciplinary hearing was conducted on April 25. The hearing summary indicates that three members of the disciplinary committee were present. The prisoner pled not guilty. He claimed he didn't know anything about the bag. Officer Ring and Sergeant Boyd testified, and Mr. Franklin apparently had the opportunity to question them. A photo of the bottles was submitted in evidence. The Board found the prisoner to be guilty of violation of state law by the preponderance of the evidence. As a result of his conviction, Mr. Franklin received ten days punitive segregation, loss of minimum trusty status, and loss of his job.

The prisoner appealed his conviction to the Warden, and then to the Commissioner. He argued in both appeals that there was no proof presented to the Board as to what the substances in the five bottles actually were; that it was not proven that he himself picked up the bag; that even if he had, picking up a bag of rocks could not be considered a violation of state law; and finally, that the disciplinary report did not specify exactly what state law he was alleged to have violated, thus effectively preventing him from marshaling an effective defense. The Warden and the Commissioner both affirmed the action of the Disciplinary Board.

Mr. Franklin then filed a timely Petition for Writ of Certiorari in the Chancery Court of Davidson County, claiming that he had been denied due process, because of the lack of specificity in the disciplinary charge against him. The petition named the Warden, the Chairman of the Disciplinary Committee, and the Department of Correction as respondents. The State filed a Motion to Dismiss for Failure to State a Claim upon which relief may be granted. *See* Rule 12.02(6) Tenn. R. Civ. P.

Mr. Franklin filed a response, to which he attached a disciplinary report that was prepared just weeks after he was charged and found guilty, as an example of a document in conformity with due process requirements. In that report, six inmates were charged with "Conspiracy to Violate State Law, TCA 39-16-201, the introduction of contraband into a penal facility."

On November 13, 2000, the chancery court filed its Memorandum and Order. The court held that the claim against the individual defendants had to be dismissed because the only proper respondent under Tenn. Code Ann. § 27-9-104 was the Disciplinary Board itself. The court also found that under the circumstances of this case, Mr. Franklin did not possess a liberty interest sufficient to trigger his due process rights, and it accordingly dismissed his petition. This appeal followed.

## II. CONSTITUTIONAL DUE PROCESS

The Department of Correction has promulgated detailed procedures to govern disciplinary procedures in the state's prisons. These are found in Index #502.01 of the Department's Manual of Administrative Policies and Procedures. Index #502.01(V) describes the policy of the Department in general terms as follows:

> Fair and impartial disciplinary proceedings will be administered against inmates charged with disciplinary infractions. The procedures contained herein shall govern the disciplinary process. This policy is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required. Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show some prejudice as a result and the error would have affected the disposition of the case.

If the Department's policies do not create any additional due process guarantees, then what due process is constitutionally required in cases like the present one? The answer is to be found by studying the opinions of the United States Supreme Court, which is the final judicial authority on the meaning of the Constitution.

In *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), the Court observed that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." The Court reasoned that the need to maintain order and discipline within prisons required a retraction of many of the rights and privileges that are available to the ordinary citizen, and concluded that when due process rights are applicable to prison disciplinary proceedings, those rights cannot be as broad as those exercised in other tribunals.

The rights that the *Woolf* court said are necessary to meet due process requirements in the context of prison disciplinary proceedings are: written notice of the claimed violation at least 24 hours in advance, a limited right to call witnesses and present documentary evidence, an impartial decision maker, and a written statement of the evidence relied upon, with the reasons stated for the action taken. 418 U.S. at 563-566.

In *Sandin v. Connor*, 515 U.S. 472 (1995), however, the Supreme Court has ruled that even those limited rights are not mandatory in every disciplinary proceeding that takes place in prison. Demont Conner, a convicted murderer serving an indeterminate sentence of thirty years to life, was sentenced to thirty days in disciplinary segregation after being found guilty of resisting an officer's attempt to perform a body search. Mr. Conner complained that alleged irregularities in the disciplinary proceedings violated his due process rights.

The Supreme Court reasoned that the constitutional imperative that no person may be "deprived of life, liberty or property without due process of law," is of limited applicability in prisons, where an inmate's liberty interest has already been greatly reduced upon because of a valid

conviction of crime and resulting imprisonment. The Court held that a liberty interest which entitles an inmate to limited due process exists in the context of a disciplinary proceeding only when the sanctions imposed for an alleged infraction subject the inmate to a deprivation or hardship which is atypical in relation to the ordinary incidents of prison life. 515 U.S. at 486. The Court found that thirty days in disciplinary segregation was well within the normal circumstances that Mr. Conner might expect from his lengthy prison term, and that it did not trigger a liberty interest protected by due process guarantees.

In the present case, Mr. Franklin was sentenced to ten days punitive segregation. He also lost his minimum security trusty status and his job. Ten days of segregation is less than the thirty days served by Mr. Conner, and cannot be considered atypical of the sort of restriction that Mr. Franklin would be likely to face during the course of his own presumably lengthy sentence.[1] Further, there is no constitutional right to any particular classification or job assignment in prison, as these are determined by the security requirements and needs of the individual institutions.

We note that Mr. Franklin argued at one point that his conviction might adversely affect his chances for parole. The Court addressed a similar argument in *Sandin v. Conner*, and observed that parole decisions are based on a myriad of considerations, ruling that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." 515 U.S. at 487.

Mr. Franklin has attached a copy of *Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001) to his reply brief. In that case, a federal appeals court found that a prison disciplinary body had failed to give an inmate sufficient notice of the charges against him, and therefore that the summary judgment against the inmate's 42 U.S.C. § 1983 claim had to be reversed. Mr. Franklin's implied argument is that the Disciplinary Board's failure to cite the state law that he is accused of violating is an equivalent omission, and that we should accordingly reverse the summary judgment in his case.

We note, however, that as a result of his "security threat" conviction, Inmate Taylor was sentenced to an indefinite term of close custody; that he was confined to close custody for almost five months before his complaint was filed; and that the confinement continued long beyond that. The appeals court analyzed the punishment imposed upon Mr. Taylor in light of *Sandin v. Connor*, supra, and found that because of the duration of his confinement to close custody, Mr. Taylor may have suffered an atypical and significant hardship that would trigger the due process rights discussed in *Woolf v. O'Donnell*, supra. Thus, we do not believe that *Taylor v. Rodriguez* furnishes grounds for reversing Mr. Franklin's ten day sentence.

---

[1] The length of Mr. Franklin's sentence is not found in the record of this case, but a search of unpublished Tennessee opinions reveals that in the case of *State v. Cedric Franklin*, No. 02C01-9710-CR-00380 (Tenn. Crim. App. at Jackson, July 29, 1998), the defendant was sentenced to concurrent terms of twenty and thirty-five years upon his guilty plea to charges of aggravated robbery and second degree murder.

In sum, Mr. Franklin is not entitled to a reversal of the trial court's judgment because of any alleged violations of his constitutional due process rights.

### III. WRIT OF CERTIORARI

The writ of certiorari is an extraordinary remedy, which is only available in cases where an inferior tribunal has exceeded its jurisdiction, or has acted illegally, fraudulently or arbitrarily. *See Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. Ct. App.1994); *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981). It is thus conceivable that the writ could be granted in situations where constitutional due process would not apply.

As the trial court correctly pointed out, however, the scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision is reached. *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873. The writ is not available as a matter of right, but is granted under unusual or extraordinary circumstances. *Clark v. Metro Government of Nashville*, 827 S.W.2d 312, 316 (Tenn. Ct. App.1991). Its grant or denial is within the sound discretion of the trial court, and will not be reversed on appeal in the absence of abuse of that discretion. *Boyce v. Williams*, 389 S.W.2d 272 (Tenn.1965).

In the present case, Mr. Franklin has alleged several irregularities in the way that the Disciplinary Board proceeded against him. For example, he complained that the Board never ordered the liquid in the bottles tested to determine if it was in fact alcoholic. We note that the familiar rules of evidence do not apply to disciplinary proceedings, but that under the rules for such proceedings "[t]he board/hearing officer shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law." Index #502.01(VI)(E)(2)(c)(2). *See also Woodrow Wilson v. South Central Correctional Facility Disciplinary Board*, No. M2000-00303-COA-R3-CV (Tenn. Ct. App. Sept. 28, 2000).

Perhaps the only real irregularity alleged by Mr. Franklin involved the vagueness of the charge against him. "Violation of State Law" is the 73rd and final disciplinary offense listed in Index #502.05(VI)(A). The definition of this catch-all offense reads as follows:

> 73. Violation of State Law (VSL)(Class A or B): Any violation of TCA not specifically addressed in this policy. The incident report shall cite the state law and TCA code.

It is undisputed that the incident report simply stated that Inmates Franklin, Brown and Reeves were charged with violation of state law, without any specific citation. Perhaps under the unusual circumstances of this case, the charging officer was simply at a loss as to how to classify the violation.

In any event, Mr. Franklin argues that without knowledge of the exact state law he is alleged to have violated, he was deprived of the opportunity to mount an effective defense. We agree that greater specificity would have been preferable, and would have more closely complied with the Disciplinary Procedures mandated by the Department.

But it appears to us that the general allegation was clear to Mr. Franklin: he was accused of being involved in some way in a scheme to bring alcoholic beverages into the prison. The possession, use, or sale of intoxicants are specifically defined as separate disciplinary offenses in the Rules and Regulations of the Department. Index #502.05(VI) (35), (36), and (37). Mr. Franklin was able to present a defense, which apparently was that he had nothing to do with any illegal activity, and was simply guilty of being in the wrong place at the wrong time. The Disciplinary Board chose not to believe his defense, and found him guilty by the preponderance of the evidence.

After thoroughly considering the record, we have found nothing to show that the Disciplinary Board exceeded its jurisdiction, or that it acted illegally, fraudulently or arbitrarily. We therefore cannot find that the trial court abused its discretion in declining to grant Mr. Franklin the Writ of Certiorari.

## IV.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Cedric Franklin.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.