[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 20, 2000, the petitioner filed a petition for a writ of habeas corpus, which was amended on September 6, 2001 and again amended on July 18, 2002. The second amended petition alleges that the petitioner lost good time credits because he was erroneously designated as a security risk group (hereinafter "SRG") member, and that this erroneous designation has made his confinement a "significant and atypical hardship" in violation of the Eighth Amendment's protection from cruel and unusual punishment. The respondent's return to the second amended petition denies the petitioner's allegations and asserts as a defense that the petitioner was properly classified and that he does not have a constitutional right to a particular classification.
On October 1, 2002, the matter was tried before this court.[1] The evidence before the court consists of a single document entered as petitioner's exhibit A, as well as the testimony by the petitioner and John Aldi, who currently is the Close Custody Program Coordinator for the Department of Correction.
"Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.) Vincenzo v. Warden,26 Conn. 132, 138, 599 A.2d 31 (1991).
"In order to prevail on a due process claim, [a petitioner] must show that [he has] been deprived of a legally recognized liberty interest, and that [he has] been deprived of liberty without due process of law."Santiago v. Commissioner of Correction, 39 Conn. App. 674, 680,667 A.2d 304 (1995). "The Moody court established the . . . proposition that not every state action that carries adverse consequences for prison CT Page 2487 inmates automatically implicates or effectuates a due process right. Prison classification and eligibility for various rehabilitation programs, wherein prison officials have full discretion to control those conditions of confinement, do not create a statutory or constitutional entitlement sufficient to invoke due process." Wheway v. Warden,215 Conn. 418, 431, 576 A.2d 494 (1990), citing Moody v. Daggett,429 U.S. 78, 88-89 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).
In the context of the forfeiture of earned good time credits, the Appellate Court has held that "[d]ue process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Internal citations and quotation marks omitted.) Jolley v. Commissionerof Correction, 60 Conn. App. 560, 561, 760 A.2d 146 (2000).
In Abed v. Commissioner of Correction, 43 Conn. App. 176, 180,682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996), the petitioner claimed that "as a result of his custodial classification, he ha[d] been prohibited from accumulating good time credits that would automatically accelerate his release date." The Appellate Court held that "the decision to deny inmates classified as safety threats the opportunity to earn the good time credits . . . does not rise to the level of a constitutionally protected liberty interest." (Emphasis added.) Abedv. Commissioner of Correction, supra, 43 Conn. App. at 181-82.
"Under the present statutory scheme, good time may be awarded in the amount of ten days per month to those inmates who warrant such diminution of sentence by good conduct and obedience to the rules. See General Statutes § 18-7a (c). Any act of misconduct or refusal to obey the established rules subjects the inmate to the loss of those credits already earned. General Statutes § 18-7a (c). Our Supreme Court has concluded that § 18-7a (c) is plain and unambiguous. According to the plain language of § 18-7a (c), the commissioner may award good time credits at his discretion. Thus, because § 18-7a (c) does not require the commissioner to award good time credits, that section cannot create a liberty interest on which the petitioner may predicate habeas corpus relief . . . We therefore conclude that § 18-7a (c) does not give the petitioner a liberty interest in good time credits he has not yet earned.
"The petitioner similarly does not have a liberty interest in unearned good time credits because his release date is not specifically predicated CT Page 2488 on the calculation of those credits as they relate to his existing sentence. Any of a host of administrative or disciplinary decisions made by prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest[.] We conclude that the decision to deny inmates classified as safety threats the opportunity to earn the good time credits specified in § 18-7a (c) does not rise to the level of a constitutionally protected liberty interest. In this case, the petitioner's release date is not contingent on his future good time credits. Although the opportunity to earn statutory good time credits may have resulted in accelerating the petitioner's release date, future failure to obey established prison rules may result in a forfeiture of any or all of these credits. Therefore, the possibility that the petitioner's unearned good time credits would affect his ultimate release date is simply too attenuated to create a liberty interest.
"Because the petitioner has no liberty interest in unearned statutory good time credits, he has failed to raise a legally cognizable claim upon which relief may be granted. (Emphasis in original; internal citations and quotation marks omitted.)" Id., 180-82.
In Beasley v. Commissioner of Correction, 50 Conn. App. 421, 718 A.2d 487
(1998), aff'd., 249 Conn. 499, 733 A.2d 833 (1999), the Appellate Court addressed the inability of an inmate in administrative segregation to earn good time under Administrative Directive 9.4. "[I]t is within the authority of the commissioner [of correction] to promulgate rules that make an inmate ineligible to earn statutory good time." Id., 435. "[O]nce classified in administrative segregation, the [petitioner] became ineligible to earn statutory good time." Id., 433-34.
"Classification in administrative segregation and the loss of eligibility to earn statutory good time are inextricably connected; to lose eligibility to earn good time, an inmate must first be classified in administrative segregation. A proper hearing as to classification necessarily means a proper hearing as to eligibility, as long as the inmate is properly notified of this nexus . . . We have held that the opportunity to earn statutory good time is not a constitutionally protected liberty interest; therefore, only minimal procedural protections are necessary to satisfy the notice requirement of due process. Id." (Internal citation omitted.) Id., at 438.
The evidence in this matter shows that the petitioner, who is in the custody of the Commission of Correction for a period of fourteen (14) years on a sentence imposed in docket number CR92-81977-T, received CT Page 2489 notice on November 27, 1998 of a SRG membership hearing. Pet'r Ex. A. The notice informed the petitioner that a hearing would be held on December 1, 1998 to determine the petitioner's status as a SRG member. Id. The notice indicated in relevant part that the "hearing was initiated by: Periodic review of your current classified status as a security risk group member, or Classification review or disciplinary report charging you with the violation of `security risk group affiliation' for one or more of the following validation factors: . . . information from an internal investigation . . . [and] information from confidential informant." Id.
The notice advised the petitioner of being subject to the potential sanctions listed in the Department of Correction's Administrative Directive 6.14, Security Risk Group, which could be imposed as a result of a determination of being a SRG member, that a hearing officer would conduct the hearing, and that the "hearing shall use the same due process procedure listed in Administrative Directive 9.5, Code of Penal Discipline, regarding notification of hearing, representation by an advocate, witnesses, staff and/or inmate, hearing and appeal." Id. The petitioner and a staff witness both signed the notification on November 27, 1998. Id.
At the habeas trial, the petitioner testified that he was unable to defend himself against the charge because the notice is vague and does not specify with particularity why such a hearing was warranted. Tr. (Oct. 1, 2002), at 10. The petitioner also testified that disciplinary reports are usually issued during the course of SRG hearings, and that such reports lay out in detail what an offender did or what infraction took place that forms the basis for a disciplinary hearing. Id., at 11. At trial as well as in written submissions to the court, the petitioner relies on Taylor v. Rodriguez, 238 F.3d 188 (2nd Cir. 2001), in support of his claim that the respondent did not comply with the necessary minimal due process requirements.
John Aldi, who has been employed with the Department of Corrections for seven and one-half years and currently is the Close Custody Program Coordinator, testified about the policies and practices of the Department of Correction as it relates to gang membership. Mr. Aldi reviewed the petitioner's file maintained by the Department of Correction, specifically the petitioner's designation and affiliation with gangs. Tr. (Oct. 1, 2002), at 14. Mr. Aldi testified that a "security risk group member is an inmate that displays affiliation with one of our eleven designated gangs in the state. At that time he has not shown that he poses a threat to the safety and security of the facility, it's just he shows that he's affiliated with one of our gangs." Id. A security risk group safety CT Page 2490 threat (hereinafter "SRGST") member, however, is "someone who exhibits leadership; someone who exhibits position within an affiliation; someone who has proven to be detrimental to the safety and security of the facility, the staff and other inmates." Id., at 14-15.
When asked whether an inmate has to receive a disciplinary report in order to be designated as either a SRG or SRGST member, Mr. Aldi responded in the negative. Id., at 15-16. As to the process relied upon by the Department of Correction in classifying someone as a SRG or SRGST member, Mr. Aldi testified that the Department of Correction relies upon Administrative Directives 6.1 and 9.5. Id., at 16. "An inmate will be given a hearing notification where he's told that he will be brought to a hearing to classify him as a SRG member or a SRGST member. He may also be issued a disciplinary report. The disciplinary report acts in lieu of the hearing notification. He is then given a chance to have an advocate and have witnesses presented. He will then be taken to a formal hearing with a disciplinary hearing officer and they will go through the formal process, going through all the correct paperwork. He will have a chance to make his case, as well as the advocate will be in attendance, and the final say-so comes down to the disciplinary hearing officer with the evidence that's presented." Id.
In response to a series of questions regarding the types of evidence an inmate can present at disciplinary hearings, Mr. Aldi answered in the affirmative to each such question. Id., at 20-22. Mr. Aldi also provided testimony as to other factors that are taken into consideration by hearing officers, including past involvement in gangs, participation in gang programs offered by the respondent and the successful completion of such programs by an inmate. Id., at 22. Mr. Aldi testified that the petitioner's current classification is administrative segregation and as a SRGST member, the former classification warranted because the petitioner "has exhibited signs that his behavior is going to be detrimental to the facility and the safety and security of the officers and the inmates[.]"Id., at 23.
Mr. Aldi testified as to why the petitioner was classified as a gang member. "From what [Mr. Aldi] read through [the petitioner's] file, while [the petitioner] was at Osborn Correctional there was an assault that took place in a housing unit. Through the investigation that was completed by the facility and use of confidential informants, it was determined that he took part in that assault. Based on that information, they took him directly to a classification hearing to make him a security risk group member." Id., at 23-24. The petitioner did not receive a disciplinary report for the assault. Id., at 24. The petitioner was, however, placed on close monitoring status and was transferred to a close CT Page 2491 monitoring unit, at which time the petitioner was "found with an altered razor, which is considered a dangerous weapon. At that point he was made a threat member and returned to Garner [Correctional Institution]." Id., at 24. While at Garner C.I., "it was found due to an internal investigation and the use of confidential informants that [the petitioner] was conspiring to assault staff in one of the units. At that point [the petitioner] was transferred to Northern [Correctional Institution] and given an administrative segregation hearing and has been since placed on administrative segregation status." Id. Mr. Aldi also testified that inmates classified in administrative segregation or as gang members are not eligible to earn statutory good time credits. Id., at 25.
Lastly, Mr. Aldi testified that there was ample information and evidence in the petitioner's security risk group file to have classified the petitioner as a SRG member and subsequently as a SRGST member. Id., at 27. And while Mr. Aldi testified that it was his opinion that the petitioner has been properly classified as a SRG member and subsequently as a SRGST member, Mr. Aldi also admitted that there are inmates who have been wrongfully designated. Id., at 28-29. Someone who is wrongfully designated can be released back into the general population after completion of the close custody or gang program, by successfully appealing the designation or via the disciplinary report process. Id., at 29.
As previously indicated, the petitioner relies on Taylor v. Rodriguez,238 F.3d 188 (2nd Cir. 2001), in support of his claim that his due process rights were violated. In Taylor, a civil rights suit brought under42 U.S.C. § 1983, the inmate plaintiff "allege[d] various prison officials deprived him of his rights by placing him in close custody, a housing status involving severely restricted privileges, for an indefinite period of time." The 2nd Circuit Court of Appeals vacated in part the District Court of Connecticut's granting of respondent's motion for summary judgment and remanded the case back to the lower court for further proceedings. Specifically, the Circuit Court disagreed with some of the District Court's conclusions, in particular regarding the sufficiency of notice and whether or not a liberty interest existed.Id., at 190.
"A claim alleging procedural due process violations must show that plaintiff enjoyed a protected interest, and defendants' deprivation of that interest occurred without due process of law . . . The Supreme Court requires that, assuming the existence of a liberty interest, a prisoner placed in administrative segregation be provided some notice of the charges against him and an opportunity to present his views to the prison CT Page 2492 official charged with deciding whether to transfer him to administrative segregation.
"Case law has not expressly set out what is to be included in a notice with respect to administrative segregation, but since such standards have been articulated with respect to disciplinary segregation, we see no reason to establish separate standards for each. The Supreme Court has held that while prisoners are entitled to the protection of procedural due process in the context of a disciplinary hearing, the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. The full panoply of rights due a defendant during a criminal trial are not available in a prison disciplinary hearing. Yet, as explained in Wolff [v. McDonnell, 418 U.S. 539, 556 (1974)], at least "the minimum requirements of procedural due process appropriate for the circumstances must be observed.
"Minimum requirements, we think, include a notice that is somethingmore than a mere formality. The effect of the notice should be to compel the charging officer to be sufficiently specific as to the misconductwith which the inmate is charged to inform the inmate of what he isaccused of doing so that he can prepare a defense to those charges andnot be made to explain away vague charges set out in a misbehavior report." (Emphasis added.) (Internal citations and quotation marks omitted.) Taylor v. Rodriguez, supra, 238 F.3d 191-93.
In Taylor, the inmate received notice that he "was being considered for close custody based on his `past admission to outside law enforcement about involvement with the Latin Kings,' `recent tension in B-Unit involving gang activity,' and `statements by independent confidential informants.'" Id., at 193. The 2nd Circuit Court of Appeals agreed that such information was too vague to allow the inmate to prepare an adequate defense to the charges. "Thus, Taylor had before him only these vague, unspecific charges to defend against. This sort of notice falls short of its function as set forth in Wolff. See 418 U.S. at 564 (`Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact'). Even in cases involving administrative segregation based upon a prisoner's membership in a gang, sufficient notice cannot simply recite vague or conclusory allegations of `recent tension . . . involving gang activity.' Rather, to be sufficient, notice must inform the defendant of morespecific facts underlying the allegation that he is suspected of gang membership, for example, a report of contact with known gang members. Specific facts underlying allegations of current member involvement were especially important here, because [the] Hearing Officer . . . expressly CT Page 2493 acknowledged Taylor's insistence that he had formally renounced membership in the Latin Kings on March 24, 1999, and that he no longer had any contact with the group.
"Although the hearing requirement for placement in administrative segregation may be met by an informal, non-adversary proceeding, it is a bedrock requirement of due process that such hearing be held at a meaningful time and in a meaningful manner. A hearing is not meaningfulif a prisoner is given inadequate information about the basis of thecharges against him. A prisoner should not, as Taylor was, have to guess what conduct forms the basis for the charges against him. Here we have no doubt that plaintiff misunderstood what charges were leveled against him . . . The notice, the contents of which are not in dispute, was deficient as a matter of law." (Emphasis added.) (Internal citations and quotation marks omitted.) Id., at 193-94.
The Taylor court also expressed concern over the District Court's conclusion that the close custody designation was based on "some evidence." Id., at 194. "To support a finding based on confidential information, we have held that an informant's testimony will suffice at least where there has been some examination of indicia relevant to an informant's credibility. Requiring an independent credibility assessment ensures not only a fair hearing and discipline based on reliable evidence, but also places a minimal burden on prison officials conducting such hearings, with the assurance that judicial review is available." (Internal citation omitted.) Id.
In the present matter, as in Taylor, the respondent has failed to show that the reliability of the confidential informant relied upon was assessed. While the notice of the hearing referred to information obtained from a confidential informant, and Mr. Aldi testified about thegeneral procedures utilized by the respondent to assess the reliability of confidential information; Tr. (Oct. 1, 2002), at 17-18; the respondent has not presented any evidence that shows a determination case was made in the instant case as to the reliability of the confidential informant relied upon. In addition to the absence of any contemporaneous findings as the reliability of the confidential informant, the respondent has also not offered any evidence from the investigating officer, the advocate, if any, who was assigned to assist the petitioner, the hearing officer or other officials who were directly involved in the classification at issue in the present petition. This court is left to speculate how the decision to classify the petitioner was supported by some evidence. Taylor v.Rodriguez, supra, 238 F.3d 194.
Based upon the foregoing, this court is unable to conclude that the CT Page 2494 respondent has fully complied with the minimal due process requirements. The petitioner, conversely, has presented evidence in the form of the notice he was given that, in accordance with Taylor, shows that the notice provided to the petitioner was constitutionally deficient. Accordingly, this court concludes that the notice given to the petitioner was deficient as a matter of law and that his due process rights were violated.
The petition seeking habeas corpus relief is granted. The petitioner's designation as a SRG member as a result of the December 1, 1998 hearing, a designation he no longer has, for the petitioner's current classification is in administrative segregation and as a SRGST member, both of which are not contested in the present petition, is hereby ordered vacated. The respondent is ordered to credit the petitioner with any statutory good time credits the petitioner was unable to earn as a result of the SRG designation at issue in this petition. Any such credit can, however, only extend to a date on which the petitioner became ineligible to earn statutory good time credits as a result of a subsequent classification that is not at issue in this petition.
BARRY, J.T.R.