OPINION OF THE COURT
Emily Jane Goodman, J.
*66 In this CPLR article 78 proceeding, petitioner Simon Anderson (Anderson), a prisoner at the Riverview Correctional Facility in Ogdensburg, New York, protests the June 1996 decision by the Temporary Release Committee at Lincoln Correctional Facility removing Anderson from the work release program. Petitioner had been on work release for more than 13 months from May 1995 to June 1996 and employed at the Neighborhood Defender Service of Harlem for most of that time. According to the petition, petitioner worked as an administrative assistant at the Neighborhood Defender Service, conducting "Know Your Rights” workshops, working with young men in prison and the Harlem community, teaching them "life skills, self-esteem, identity and pride and Heritage.” The petition alleges that Anderson was living a "drug free life” and that his "reintegration into the community had been successful.” The petition further alleges that in June 1996, Anderson was removed from work release without notice and without an opportunity to be heard, in violation of his due process rights.
When petitioner first entered the work release program, he lived at the Queensborough Correctional Facility. Soon afterwards he obtained permanent employment and switched to a "Five and Two” schedule, that is, spending five nights at home and two nights per week at the facility. By April 1996, petitioner was on a "Seven and Zero” schedule, that is, he lived permanently at home and only reported to the correctional facility twice a week to meet with his counselor and parole officer. At some time during that period, he was transferred from Queensborough Correctional Facility to Lincoln Correctional Facility.
According to the verified answer, on May 20, 1996, petitioner submitted a specimen of his urine for analysis to determine whether or not he had used controlled substances. After analysis, the urine sample was found positive for cocaine. Petitioner was charged with two violations, use of controlled substance and failure to comply with temporary release program rules. On June 14, 1996, Hearing Officer Deputy Superintendent Harrison conducted a tier III Superintendent’s hearing at Lincoln Correctional Facility. Petitioner pleaded not guilty but was found guilty of the temporary release violation and the controlled substance violation. Penalties imposing 30-day restrictions, loss of phone privileges, loss of commissary privileges and loss of good-time days, were also recommended as was a referral to the "TRC”, i.e., the Temporary Release Committee. *67 According to the answer, when an inmate has been found guilty of a temporary release violation at a Superintendent’s tier III hearing, he does not have the right to be present at a meeting of the TRC.
Section 855 (9) of the Correction Law provides, in pertinent part, as follows: "Participation in a temporary release program shall be a privilege. Nothing contained in this article may be construed to confer upon any inmate the right to participate, or to continue to participate, in a temporary release program.”
7 NYCRR 1904.1 (a) provides as follows: "Participation in the temporary release program is a privilege. An inmate does not have the right to participate, or to continue to participate, in the temporary release programming. A superintendent may at any time revoke an inmate’s participation in the temporary release program, and upon the recommendation of the temporary release committee, the commissioner, or the chairman of the board of parole or his designee, shall revoke an inmate’s privilege to participate in the temporary release program.” (Emphasis added.)
Petitioner was removed from the work release program by the Temporary Release Committee at a meeting from which petitioner was excluded pursuant to 7 NYCRR 1904.2 (i) (section of the Temporary Release Manual). The only notice of the TRC hearing petitioner received was at the Superintendent’s hearing (tier III) on June 14, 1996 where the Hearing Officer stated without further detail that his case would be referred to the "TRC”.
In Sandin v Conner (515 US 472 [1995]), the United States Supreme Court narrowed the range of a prisoner’s liberty interests that are protectable under the Due Process Clause of the US Constitution 14th Amendment. The 14th Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of Law”.
Procedural due process questions are analyzed in two steps. The first asks whether there exists a liberty or property interest which has been interfered with by the State. Such protected interest may arise either directly from the Due Process Clause of the US Constitution or from the laws of the State. (Hewitt v Holmes, 459 US 460 [1983].) The second question is whether the procedure employed was sufficient to protect the interest. (Goldberg v Kelly, 397 US 254 [1970].)
In Sandin (supra), the Supreme Court shifted the focus of the liberty interest analysis to one based on the nature of the deprivation, rather than one based on the language of a partic *68 ular State regulation. Thus, under Sandin, State-created liberty interests generally are those which when lost impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” (Sandin v Conner, 515 US, at 484.) So in Sandin, the prisoner’s segregated confinement did not present the type of atypical, significant deprivation relative to the ordinary incidents of prison life in the sense that such confinement was arguably "reasonably foreseeable” within the confines of prison life and not a "major disruption” in the prisoner’s environment. (Sandin v Conner, 515 US, at 486.)
In this case, petitioner argues that the sudden revocation of his work release privileges imposes an atypical and significant hardship upon him in light of the legitimate expectations to which a prisoner accorded such conditional liberty could reasonably be expected to possess. This court agrees that petitioner’s removal from seven days a week outside the prison walls to full-time incarceration constitutes a substantial disruption of his environment under Sandin (supra). It is hard to imagine a greater disruption in one’s life than the change from living and working in the community to life behind prison walls. (Accord, Roucchio v Coughlin, 923 F Supp 360, 374 [ED NY 1996] [removal of prisoner from five days a week participation in work release worked a major disruption in his prison environment]; Quartararo v Catterson, 917 F Supp 919, 940 [ED NY 1996] [same]; Greaves v State of New York, 951 F Supp 33 [SD NY 1996] [full-time imprisonment of petitioner who had been living outside the prison five days a week].)
This case and the cases cited above are distinguishable from cases cited by respondent which involved prisoners who had never participated in a temporary release program. (See, e.g., Hong Ki Lee v Governor of State of N. Y., 87 F3d 55 [2d Cir 1996] [class action by prisoners who were rendered ineligible for the temporary release program by a recent amendment to New York’s Correction Law].)
As the type of punishment imposed is an "atypical and significant hardship” on the prisoner, it must be determined whether State law has created a constitutionally protectable liberty interest. (Sandin v Conner, 515 US, at 484, supra.)
Prior to Sandin (supra), the Second Circuit Court of Appeals in Tracy v Salamack (572 F2d 393, 396 [2d Cir 1978]) held that the State of New York, by creating the temporary release *69 program, created a liberty interest that may not be terminated without an individualized due process hearing.[1]
Thus, petitioner’s removal from work release deprived him of a liberty interest and the denial to him of any participation at a hearing requires vacating the decision. As New York State regulations do not currently provide for a hearing, this court will not remand the issue but rather hereby orders that a hearing will take place before this court within 90 days on the issue of whether petitioner’s removal from the work release program was arbitrary and capricious.[2]

. As the court has found that New York State created a liberty interest by petitioner’s seven days a week participation in the work release program, the court need not determine whether the deprivation also triggered inherent due process rights such as in the case in parole revocations. (See, e.g., Morrissey v Brewer, 408 US 471 [1972] [inherent due process protection arises where there is revocation of a prisoner’s complete release from institutional life].)

. At oral argument petitioner withdrew his timeliness argument.