Simon ANDERSON, Plaintiff–Appellee,

v.

Director James F. RECORE, Temporary Release Programs, Department of Correctional Services, Superintendent Joseph Williams, Lincoln Correctional Facility, Sr. Counselor Johnella Hill, Department of Correctional Services, Defendants–Appellants,

Commissioner Glenn S. Goorde, Defendant.

Docket No. 05–4096–PR.

United States Court of Appeals, Second Circuit.

Argued: Jan. 23, 2006.

Decided: May 4, 2006.

Simon Anderson, pro se (Glenn Finley, Glenn Finley & Associates, on the brief), Bronx, New York.

Daniel J. Chepaitis, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York, on the brief; Caitlin J. Halligan, Solicitor General, Michael S. Belohlavek, Senior Counsel, Division of Appeals & Opinions, of counsel), New York, New York, for Defendants–Appellants.

Before: WALKER, Chief Judge, WINTER and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Defendants-appellants James F. Recore, Director of Temporary Release Programs of the New York State Department of Correctional Services ("DOCS"), Joseph Williams, Superintendent of the Lincoln Correctional Facility, and Johnella Hill, senior DOCS counselor, (collectively, "defendants") appeal from the entry of partial summary judgment for plaintiff-appellee Simon Anderson by the United States District Court for the Southern District of New York (Daniels, J.) on Anderson's claim that his removal from a temporary release program without notice and a hearing before the Lincoln Temporary Release Committee ("TRC") violated his right to due process. Specifically, defendants appeal from the entry of partial summary judgment denying their claims of qualified immunity and granting summary judgment to Anderson on liability. On appeal, defendants argue that the district court erred in finding a due process violation because Anderson received all the process he was due in a disciplinary hearing held after Anderson tested positive for cocaine and that this test result formed the basis

for the TRC's decision to remove him from the temporary release program. We disagree and hold that the Due Process Clause required notice to Anderson of the TRC hearing date and some opportunity for Anderson to have been heard before the TRC acted. We reverse the partial judgment of the district court, however, because defendants are entitled to qualified immunity.

## BACKGROUND

The facts relevant to this appeal are not in dispute. Anderson was convicted of robbery in 1992 and sentenced to an indeterminate term of 56 months' to 14 years' imprisonment. In 1995, the TRC granted him permission to participate in a temporary work release program, pursuant to which he lived and worked outside the prison five days a week. By the Spring of 1996, Anderson lived seven days a week outside the prison and reported to the Lincoln Correctional Facility twice a week.

On May 20, 1996, Anderson submitted a sample for urinalysis that tested positive for cocaine. When he reported to the Lincoln Correctional Facility on June 5, 1996, he was detained and, on June 13, 1996, he was served with a misbehavior report charging him with using a controlled substance and violating the rules of the temporary release program. Anderson pleaded not guilty to the charges. On June 14, 1996, the Lincoln Correctional Facility convened a disciplinary hearing, known as a "Tier III" hearing, before a disciplinary hearing officer. Anderson did not seek to call any witnesses at the hearing. At the conclusion of the hearing, the disciplinary officer sustained the charges against Anderson and sentenced him to a mandatory disciplinary surcharge of $5, 30 days' loss of phone and commissary privileges, and 30 days' confinement to a dorm bedroom.[1] The hearing officer also referred Anderson's case to the TRC. Anderson was given written notice of the disposition of the Tier III hearing, as well as the fact that the matter would be referred to the TRC. On June 19, 1996, Anderson was transferred from the Lincoln Correctional Facility to the Riverview Correctional Facility to serve his 30 days of confinement in a dorm room. Anderson filed an administrative appeal of the Tier III decision and the decision was ultimately affirmed on August 12, 1996.

In the evening of June 19, 1996, after Anderson had been transferred to Riverview, the TRC met at Lincoln Correctional Facility to consider Anderson's case. It is undisputed that Anderson did not have notice that the meeting would occur on that day and did not attend because he had been transferred to Riverview that morning. Because Anderson already had suffered a drug relapse and had participated in a drug relapse program, the TRC did not have the authority to recommend another drug relapse program. Instead, it could only recommend his removal from the temporary release program or his continued participation in the program. The TRC recommended that Anderson be removed from the program.

Anderson then brought an action in state court pursuant to Article 78 of the New York Civil Practice Law and Rules, which provides a mechanism for judicial review of administrative decisions, against defendant-appellant Joseph Williams challenging his removal from the temporary release program without notice or an opportunity to be heard. On June 16, 1997, the New York County Supreme Court held that the revocation of Anderson's tempo-

1. The disciplinary officer also recommended that Anderson lose 60 days of "good time" credits, but there is no evidence in the record of what became of this recommendation.

rary work release without notice or an opportunity to be heard before the TRC violated his right to due process and ordered a hearing. *Anderson v. Williams,* 173 Misc.2d 65, 660 N.Y.S.2d 957 (N.Y.Sup.Ct.1997). In September 1997, DOCS and Anderson settled the suit, agreeing that DOCS would not appeal and that Anderson would be reinstated on temporary release. On September 4, 1997, Anderson was reinstated to the temporary release program.

On February 9, 1999, Anderson filed this civil rights action pursuant to 42 U.S.C. § 1983, asserting that his removal from the temporary release program violated his right to due process under the Fourteenth Amendment to the Constitution and seeking damages for the fifteen months during which he was prohibited from participating in the work release program. Adopting the report and recommendation of Magistrate Judge Henry Pitman, the district court dismissed the complaint against defendants, holding, *inter alia,* that they were entitled to qualified immunity because the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), cast doubt upon whether an inmate had a sufficient liberty interest in temporary release to require notice and a hearing before its deprivation and, by extension, upon our holding to that effect in *Tracy v. Sala-mack,* 572 F.2d 393, 395–96 (2d Cir.1978). *See Anderson v. Goord,* 99 Civ. 0975, 2001 WL 561227, at *1 (S.D.N.Y. May 24, 2001) (*"Anderson I"*). The district court also dismissed the complaint against defendant DOCS Commissioner Glenn Goorde on the ground that Anderson had not alleged sufficient personal involvement, a determination that Anderson did not appeal. *See id.* at 2001 WL 561227, at *2. On appeal, this Court reversed the qualified immunity decision, holding that *Sandin* did not call into question the continued validity of *Tracy.*

*Anderson v. Recore,* 317 F.3d 194, 201–02 (2d Cir.2003) (*"Anderson II"*). In doing so, we noted that "[n]either party argues that any procedural guarantees Anderson enjoyed at [the Tier III] hearing justify the lack of due process accorded Anderson with respect to the revocation of his temporary release status" and thus did not address that question. *Id.* at 196 n. 1.

On remand, defendants moved for summary judgment on the ground left open in *Anderson II*—that the Tier III hearing provided Anderson with all the process he was due and that, even if it did not, they were nonetheless entitled to qualified immunity. The district court rejected defendants' argument that the Tier III hearing was sufficient because it was the "functional equivalent" of a TRC hearing. *See Anderson v. Recore,* No. 99 Civ. 0975, 2005 WL 1515412, at *2–3 (S.D.N.Y. June 22, 2005) (*"Anderson III"*). The district court noted that the revocation of temporary release is more similar to the revocation of parole than to a prison disciplinary hearing and thus that more process is required than is provided in a Tier III hearing. *See id.* at *2. Looking to the parole revocation procedures established in *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the district court found that defendants' failure to notify Anderson of the TRC hearing and to provide him an opportunity to present any evidence or argument on his behalf deprived Anderson of due process. *Anderson III,* 2005 WL 1515412, at *3. The district court further concluded that the Tier III hearing was not the functional equivalent of the TRC hearing because the TRC considered evidence not at issue in the Tier III hearing. *Id.*

Having found that defendants violated Anderson's right to due process, the district court considered their claims to qualified immunity. Noting this Court's many

decisions requiring a hearing prior to the revocation of temporary release, as well as the DOCS regulations that "unequivocally provide that the only proceeding at which an individual's continued participation in the [Temporary Release Program] can be resolved is in the TRC hearing," the district court found that no reasonable official could have thought that the Tier III hearing would satisfy due process for purposes of removing Anderson from temporary release. *Id.* The district court thus granted summary judgment *sua sponte* to Anderson on the issue of liability. This timely interlocutory appeal followed.

On appeal, defendants assert that Anderson's right to due process prior to be being deprived of his liberty interest in remaining on temporary work release was satisfied by the Tier III hearing because this hearing resolved all factual questions with respect to his violation of the conditions of his temporary release. They contend that Anderson had no right to further argument before the TRC and that any such argument would have been frivolous. Defendants further maintain that even if the failure to afford Anderson some kind of hearing before the TRC violated his right to due process, such a right was not clearly established in these circumstances.

## DISCUSSION

■ This Court has jurisdiction over defendants' appeal of the district court's entry of partial summary judgment because a "denial of a claim of qualified immunity, to the extent it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *see also Sira v. Morton,* 380 F.3d 57, 66 (2d Cir. 2004) (holding that a denial of qualified immunity on the law "is collateral to the

merits of the underlying action and is, therefore, considered final for appellate purposes").

We review a grant of summary judgment *de novo,* construing the evidence in the light most favorable to the non-moving party. *Anthony v. City of New York,* 339 F.3d 129, 134 (2d Cir.2003). This Court also reviews a district court's denial of qualified immunity *de novo. Luna v. Pico,* 356 F.3d 481, 486 (2d Cir.2004). In doing so, this Court must determine first whether there was a constitutional violation and then whether the right was clearly established at the time of the challenged action. *Id.* at 487 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

## I

■ There is no question that Anderson had a liberty interest in continuing his participation in the temporary release program. *See Anderson II,* 317 F.3d at 197, 199–200; *Friedl v. City of New York,* 210 F.3d 79, 84 (2d Cir.2000) ("Prisoners on work release have a liberty interest in continued participation in such programs."). As the defendants concede, Anderson cannot be deprived of this liberty interest without due process, which includes notice and an opportunity to be heard. *See Friedl,* 210 F.3d at 84–85; *see also Kim v. Hurston,* 182 F.3d 113, 118 (2d Cir.1999) (holding that while participating in a temporary release program, inmates who lived at home "enjoyed a liberty interest, the loss of which imposed a sufficiently 'serious hardship' to require compliance with at least minimal procedural due process"). In *Tracy v. Salamack,* 572 F.2d 393 (2d Cir.1978), we held that "a Due Process hearing is required before inmates already participating in or approved for the [temporary release] program may be removed." *Id.* at 396. We explained that

due process requires "a reviewable exercise of discretion to take place following a *Wolff v. McDonnell* Due Process hearing which, of course, must be accompanied by a written statement of reasons." *Id.* at 397; *see also Friedl,* 210 F.3d at 84–85.

Defendants contend that Anderson's right to due process was satisfied by the Tier III hearing held with respect to his violations of the conditions of his temporary release because that hearing provided him with due process protections in the resolution of the factual questions about whether he had, in fact, committed the charged violations. Defendants then assert that there was no purpose to be served by additional process because the TRC lacked discretion in determining whether to remove Anderson from the program. Finally, they contend any argument for Anderson's continued participation would have been frivolous. We consider these three arguments in turn.

### A.

■ As noted, the due process requirements for a temporary work release revocation hearing have long been established. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court considered the type of disciplinary hearing necessary before an inmate may be deprived of "good time" credits. The Court held that due process required advance written notice of the charges, some opportunity to call witnesses and confront the evidence, and a written statement of the decision. *Id.* at 563–66, 94 S.Ct. 2963. In *Tracy,* we held that a participant in a temporary release program must be provided with a *Wolff*-type hearing before he or she may be deprived of his or her liberty interest in participating in that program. 572 F.2d at 397. More recently, in *Young v. Harper,* 520 U.S. 143, 117 S.Ct. 1148, 137 L.Ed.2d

270 (1997), a case involving a pre-parole program somewhat similar to the temporary release program at issue here, the Supreme Court held that a pre-deprivation hearing should provide procedures similar to those set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *Young,* 520 U.S. at 152–53, 117 S.Ct. 1148. Those procedures include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593. We have since reiterated that an inmate's significant liberty interest in continuing in a temporary release program requires a pre-deprivation hearing that includes protections similar to those set forth in *Morrissey. See Friedl,* 210 F.3d at 85.

Here, Anderson received notice of the charged temporary release violations prior to the Tier III hearing, which took place before a neutral hearing officer. The Tier III hearing procedures further allowed Anderson to request witnesses and submit documentary evidence. *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 254.5, 254.6. Anderson received written notice of the outcome, as well as the fact that his case would be referred to the TRC. We have little difficulty concluding that these protections satisfy the Due Process Clause for purposes of determining whether

Anderson violated the terms of his temporary release and the appropriate disciplinary penalties for that violation. None of our cases require that Anderson be allowed to re-litigate those issues before the TRC. But this does not end the inquiry because only the TRC, not the Tier III hearing officer, had authority to recommend Anderson's removal from the temporary release program. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 1904.2(f) ("The hearing officer may not impose as a penalty removal from the temporary release program. Only the temporary release committee can remove an inmate from the program.").

## B.

■ Defendants next argue that because all the factual issues were resolved in the Tier III hearing, Anderson was not entitled to any further process with respect to the TRC's decision about whether to remove him from the temporary release program. They first rely on part of Justice Breyer's dissent in *Sandin*, in which he noted that,

the Due Process Clause does not require process unless, in the *individual* case, there is a relevant factual dispute between the parties. Just as courts do not hold hearings when there is no "genuine" and "material" issue of fact in dispute between the parties, see Fed. Rule Civ. Proc. 56 (summary judgment), so the Due Process Clause does not entitle an inmate to additional disciplinary hearing procedure (such as the calling of a witness) unless there is a factual dispute (relevant to guilt) that the additional procedure might help to resolve, see *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (*per curiam*).

515 U.S. at 503–04, 115 S.Ct. 2293 (emphasis in original). Although defendants read

Justice Breyer's use of the word "process" to mean that a hearing is mandated solely where there is a factual dispute, the following sentence makes clear that Justice Breyer was only referring to particular fact-finding procedures, such as the calling of witnesses, that bear on the relevant factual dispute.

This reading is further supported by Justice Breyer's citation to *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). In *Codd,* the Supreme Court considered whether the Due Process Clause required New York City to hold a hearing for Elliot Velger, a probationary police officer, before placing a "stigmatizing" report in Velger's personnel file indicating that he had attempted suicide by putting a revolver to his head. *Id.* at 626, 97 S.Ct. 882. The Court held that Velger's due process claim failed because he did not dispute the truth of the suicide-attempt allegation. *Id.* at 627–28, 97 S.Ct. 882. In a stigma case, the Supreme Court explained, the Due Process Clause requires a hearing only to provide an opportunity for the public employee to clear his or her name. *Id.* at 627, 97 S.Ct. 882. Thus, the lack of a hearing was not viewed as a violation of the Due Process Clause when the employee did not dispute the truth of the stigmatizing allegation. *Id.* at 627–28, 97 S.Ct. 882. The Supreme Court distinguished this type of single-purpose factual hearing from a parole hearing, which has two purposes: to adjudicate facts and to determine whether, on the basis of those facts, a certain consequence should follow. *See id.* at 627, 97 S.Ct. 882 (citing *Morrissey,* 408 U.S. at 479–80, 92 S.Ct. 2593). As the Court explained, in a parole hearing, "[t]he fact that there was no dispute with respect to the commission of the act would not necessarily obviate the need for a hearing on the issue of whether the commission of the act warranted the revoca-

tion of parole." *Id. Codd* thus makes clear that the Due Process Clause may require a hearing when there is no factual dispute if the decision-maker has discretion to determine the consequences of the undisputed facts.

■ Defendants argue that such discretion was lacking here and that the TRC had no choice but to revoke Anderson's participation in the temporary release program because his violation was so serious that he was no longer eligible to participate in the program. Defendants rely upon the regulation establishing the conditions of eligibility for the temporary work release program. Section 1900.4(c)(7) of title seven of the New York Compilation of Codes, Rules and Regulations refers to serious disciplinary infractions and provides, *inter alia*, that the TRC interviewer:

> shall make sure that the inmate has not, in the eight weeks prior to application, been confined in special housing, keeplocked for longer than 30 days, or had any loss of good time. The eight-week period will be counted beginning with the first day after his release from confinement. Room/dorm restrictions are equivalent to keeplock. Applications will not be accepted from inmates while they are in special housing or keeplock.

N.Y. Comp.Codes R. & Regs. tit. 7, § 1900.4(c)(7). Here, Anderson was determined to have committed a serious disciplinary infraction by using cocaine and received, as punishment, confinement to a dorm room for 30 days, which is a form of keeplock status under § 1900.4(c)(7). Defendants argue that although § 1900.4 concerns only the initial eligibility requirements for temporary release, "the TRCs have treated such punishment as a disqualification for continued participation in tem-

porary release. Where the disqualifying fact arises after or is discovered after an inmate has been admitted to a temporary release program, revocation of participation is required." The regulations themselves, however, do not support this reading and there is no evidence that this is, in fact, TRC policy.[2]

The regulation that specifically governs revocation of, rather than eligibility for, temporary release does not indicate that a serious disciplinary infraction automatically disqualifies a participant. Section 1904.1(b) provides that a superintendent

> may revoke an inmate's participation in the temporary release program ... at any time that the superintendent has knowledge that the inmate's continued participation in a temporary release program is inconsistent with the safety of the community, is inconsistent with the best interest of the inmate, or if the inmate has indicated by his conduct that there is a substantial likelihood that he cannot successfully adjust [to] his temporary release program.

N.Y. Comp.Codes R. & Regs. tit. 7, § 1904.1(b). The regulation provides further that "[i]ndicators of unsuitability for continued participation in the temporary release program include ... violations of departmental rules." *Id.* § 1904.1(c)(3). Although this section does not specifically indicate what factors the TRC must rely upon in arriving at its recommendation, it makes clear that the determination is based on an inmate's actions in or adjustment to the temporary release program. Moreover, while this section provides that Anderson's violation of the conditions of his supervised release is an indication that he was not suitable for continued partic-

---

**2.** Moreover, to the extent that Anderson was not confined to the dorm room for *more* than 30 days, it is not certain that the temporary release program eligibility criteria would disqualify him from participation.

ipation in the program, it does not require that his temporary release status be revoked. *See id.* § 1904.1(b) ("A superintendent *may* revoke an inmate's participation in the temporary release program . . . ." (emphasis added)); *see also* N.Y. Correct. Law § 855(9) (McKinney's 2003) ("The superintendent of the institution *may* at any time . . . revoke any inmate's privilege to participate in a program of temporary release in accordance with regulations promulgated by the commissioner." (emphasis added)).

We addressed an argument similar to defendants' argument here in *Severino v. Negron*, 996 F.2d 1439 (2d Cir.1993) (*per curiam*). Severino was a lawful resident alien whose conviction had rendered him deportable. *Id.* at 1440. To be eligible for temporary release, an inmate cannot have an Immigration and Naturalization Service ("INS") warrant on file. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 1900.4(c)(6)(i)(g), (ii)(d)(iii). At the time of Severino's admission into the temporary release program, the INS had not served a warrant against him. While Severino was free on temporary release, however, the INS served a warrant and detainer on him, and the State removed Severino from the temporary release program. *Severino*, 996 F.2d at 1440. The only question asked at Severino's TRC hearing was whether he was the individual named in the immigration warrant. *Id.* In considering Severino's claim that he was removed from the program without due process of law, we noted the distinction between the temporary release eligibility criteria in of § 1900.4 and the criteria for revocation in § 1904.1. *Id.* at 1441. We observed that, under the regulatory scheme, "in order to remove a work release participant from his program, the appropriate official might well have to find that one of the subjective criteria in section 1904.1 [i.e., that the inmate is unsuitable for continued partic-

ipation] have been met." *Id; see also* N.Y. Comp.Codes R. & Regs. tit. 7, § 1904.1(c) (setting forth a non-exhaustive list of "[i]ndicators of unsuitability for continued participation in the temporary release program"). Although we did not decide whether Severino's right to due process had been violated, we noted that, "[i]f we were to rule today on the due process question, we likely would hold that a violation has occurred." *Id.*

We see no reason to depart from our reasoning in *Severino.* The regulations at issue are the same and do not indicate that the TRC must recommend that an inmate be removed from a program once he no longer meets requirements for entrance into the program. We thus conclude that the TRC had discretion to recommend Anderson's continuance in the program.

### C.

The defendants assert further that even if the TRC had discretion about the disposition of Anderson's case, any arguments in favor of keeping him in the program would have been frivolous because Anderson's use of cocaine was a serious violation of the terms of his temporary release. Analogizing a hearing before the TRC to a request for oral argument, they rely on *Federal Communications Commission v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 276, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949), to contend that due process does not require a hearing to air only frivolous or insubstantial arguments. Defendants' reliance on *WJR* is mistaken. In *WJR*, the Supreme Court held that oral argument is not a necessary component of due process in all instances and that argument in writing may be sufficient. *Id.* Thus, *WJR* does not stand for the proposition that due process requires no opportunity to argue, but simply that written argument may suffice in some circumstances.

Here, Anderson did not have any opportunity to argue, whether in person or by written submission, that the charges sustained against him in the Tier III hearing did not warrant the revocation of his temporary release.

■ Moreover, an inmate's right to some opportunity to be heard prior to being deprived of a liberty interest does not depend on the strength of his or her argument against the deprivation. In *Kim v. Hurston*, we held that corrections officials had violated Kim's right to due process by failing to give her the minimal procedural protections even in the "unusual" case in which "the minimal hearing that procedural due process requires would have done Kim little good since she could not have realistically contested the changed reason, mental health classification," which caused her removal from the temporary release program. 182 F.3d 113, 119 (2d Cir.1999). Similarly, where, as here, the TRC had discretion to make a considered judgment about whether Anderson should continue his participation in the temporary release program, due process requires some opportunity for Anderson to argue that the charges sustained in the Tier III hearing did not warrant revocation of his supervised release.[3] *See Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593 ("The parolee must have an opportunity to be heard and to show, if he can, ... that circumstances in mitigation suggest that the violation does not warrant revocation."); *Friedl*, 210 F.3d at 85 (holding that requirements similar to those set forth in *Morrissey* "would logically apply to revocation of work release").

In sum, we affirm the district court's conclusion that defendants violated Anderson's right to procedural due process by failing to give him notice of the TRC hearing and an opportunity to be heard.

## II

■ "[P]ublic officials ... are protected by qualified immunity from civil liability for actions taken in their official capacity, if those actions were objectively reasonable in light of clearly established rules then extant." *Morris–Hayes v. Bd. of Educ.*, 423 F.3d 153, 158 (2d Cir.2005). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Stated differently, "[a] right is clearly established if 'in light of preexisting law the unlawfulness [of the action taken is] apparent.'" *Smith v. Coughlin*, 938 F.2d 19, 20 (2d Cir.1991) (*per curiam*) (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034 (second alteration in original)).

■ As this Court held in an earlier appeal in this case, at the time of Anderson's removal from the program in 1996, it was clearly established that an inmate has a right to due process, including notice and a hearing, prior to being removed from a temporary release program. *See Anderson II*, 317 F.3d at 195, 202; *see also Kim*, 182 F.3d at 120 ("At the time of the April 10[, 1995] hearing, it was clearly established in New York that an inmate on work release had a legally

---

**3.** We take no position on which procedures New York may use to comply with this requirement. *See Krimstock v. Kelly*, 306 F.3d 40, 69 (2d Cir.2002) (observing that there is no "universal approach to satisfying the requirements of meaningful notice and opportunity to be heard"). Although the district court concluded that certain procedures were required, *see Anderson III*, 2005 WL 1515412, at *3, the question of whether any particular procedure may be sufficient for due process purposes is not before this Court, and we therefore have no cause to decide this question.

protectable interest in remaining on such release, and the minimal procedural due process requirements of notice and reasons for terminating the protected liberty interest have long been established." (internal citations omitted)). Nevertheless, defendants argue that a reasonable official would not have known that the failure to provide Anderson with a hearing before the TRC was a violation of due process given the fact that Anderson had charges sustained against him in a Tier III hearing and was physically confined to a correctional facility at the time of the TRC proceeding. We agree.

Although, as discussed *supra*, New York corrections regulations do not mandate that an inmate against whom serious misbehavior charges have been sustained be removed from temporary release, a reasonable official could have believed that when an inmate was physically confined as a result of those charges, the TRC did not have discretion in determining whether to remove Anderson and thus that no further hearing was necessary. That is, the constitutional implications of New York's division of authority among the TRC and Tier III hearing officer would not necessarily be self-evident to a reasonable officer. An officer could reasonably have believed that the fact that Anderson was physically confined to a facility for 30 days was inconsistent with his simultaneous participation in the temporary release program, although

there is no inconsistency as a matter of law.

To be sure, in *Kim*, we concluded that Kim's right to notice and reasons for terminating her temporary release was clearly established even though Kim had been physically removed from the program as a result of her threatened suicide attempt and transferred to a facility providing appropriate mental health treatment. *See* 182 F.3d at 116. While Kim was at this facility, the TRC met without giving Kim notice or a hearing and removed her from the program because she was medically unsuitable without informing her of the reason for her removal. *Id.* By contrast, Anderson had a hearing to adjudicate the charges that he had violated the terms of his temporary release and was informed that, as a result of his hearing, his case would be referred to the TRC. Anderson thus received some minimum due process we found missing in *Kim*.[4] Hence, we conclude that an officer could reasonably have believed that the TRC lacked discretion and that no further hearing was necessary. Defendants are therefore entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of partial summary judgment to Anderson and REMAND the case to the district court for the entry

---

**4.** Defendants assert also that they are entitled to qualified immunity because their actions were consistent with state regulations, which do not provide an inmate the opportunity to appear before the temporary release committee when he or she has had charges sustained in a Tier III hearing and is no longer present in the facility from which he or she participated in the temporary release program. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 1904.2(k) ("If an inmate is no longer present at the facility and has had violations sus-

tained by a disciplinary hearing, it is not required that the inmate appear at the meeting of the temporary release committee."). Because we hold that defendants are entitled to qualified immunity on other grounds, we need not consider this argument. We note, however, that our decision in *Kim* clearly indicated that an inmate who was not present at the facility in which the TRC was meeting was entitled to due process protections. *See* 182 F.3d at 119–20.

of judgment for defendants on the basis of qualified immunity.