Oman GUTIERREZ, Plaintiff,

v.

Debra R. JOY, et al., Defendants.

No. 05 Civ. 6643(VM).

United States District Court,
S.D. New York.

July 27, 2007.

Oman Gutierrez, Beacon, NY, Pro se.

Jose Luis Velez, State of New York Office of the Attorney General, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Pro se plaintiff Oman Gutierrez ("Gutierrez") brought this case pursuant to 42 U.S.C. § 1983 (" § 1983") against defendants State of New York Department of Correctional Services ("DOCS") Director of Temporary Release Programs Debra R. Joy ("Joy"), Temporary Release Reviewer Barbara King ("King"), and DOCS Fulton Correctional Facility ("Fulton") Acting Superintendent Cynthia Morton ("Morton") (collectively, "Defendants") in their official and individual capacities. Gutierrez, who is presently incarcerated in DOCS Fishkill Correctional Facility ("Fishkill"), alleges that Defendants violated his due process rights when he was removed from the Temporary Release Program ("TRP") in March 2005. Defendants[1] move for summary judgment, pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), asserting that (1) Gutierrez failed to state a denial of due process claim; (2) Defendants are entitled to qualified immunity; and (3) Defendants are entitled to Eleventh Amendment immunity. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

### I. BACKGROUND[2]

On February 10, 2000, Gutierrez was convicted in New York State Supreme Court, New York County, of criminal sale of a controlled substance in the second

---

1. The complaint names an additional defendant, Temporary Release Committee ("TRC") Chairman G. Dillard. The docket does not indicate that this individual has been served with the complaint. Additionally, the complaint names John or Jane Doe # 1, John or Jane Doe # 2, John or Jane Doe # 3, and John or Jane Doe # 4, none of whom have been identified or served. Thus, these parties, despite being named as defendants, are not included in this motion. The Court does not address at this time whether the time for Gutierrez to identify these defendants has expired.

2. The factual summary that follows derives primarily from Gutierrez's Civil Rights Complaint, dated June 18, 2005 ("Compl."); Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Dec. 13, 2006 ("Defs.Mem."); Declaration of Jose L. Velez in Support of Defendants' Motion for Summary Judgment, dated Dec. 13, 2006 ("Velez Decl."); Plaintiff's Memorandum of Law in Opposition to Summary Judgment, dated Apr. 13, 2007 ("Pl.Mem."); Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment, dated Apr. 13, 2007 ("Pl.Aff."); Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment, dated Apr. 25, 2007 ("Defs. Reply Mem."); and Plaintiff's Traverse to Defendants' Reply Memorandum of Law, dated May 3, 2007 ("Pl.Trav."). Except where specifically referenced, no further citation to these sources will be made.

degree, under New York Penal Law § 220.41. He received a sentence of six years to life, which is he presently serving.

While incarcerated at Edgecombe Correctional Facility ("Edgecombe"), Gutierrez was given approval on December 16, 2004 to participate in the TRP and subsequently found employment at Broadway Food Corp. in Manhattan at a rate of approximately $200 per week. Following a test conducted on January 28, 2005, Gutierrez indicated positive for the use of alcohol, in violation of TRP rules and regulations. Gutierrez agreed to enter a Relapse Program for alcohol and substance abuse ("Relapse Program") and was transferred to Fulton for this purpose on February 2, 2005.

After approximately seven weeks at Fulton, on March 23, 2005, Gutierrez was transferred out of the TRP/Relapse Program and was brought to Fishkill. He was informed, on March 30, 2005, that he had been transferred from Fulton "per Central Office's decision." (Pl. Mem. at 4.) On April 5, 2005, a TRC hearing was held at Fulton with Gutierrez *in absentia.* The recommendation of the TRC, which was adopted by Morton, was to suspend Gutierrez from TRP participation due to an ongoing DOCS investigation of some other matter. Gutierrez was first informed of the hearing and its outcome three days later by way of a letter from Joy stating that Gutierrez was "the subject of an ongoing investigation." (Letter of Debra R. Joy, dated Apr. 8, 2005, attached as Ex. 7 to Pl. Aff.) There was no indication in the letter as to the subject matter of that investigation.

Following several letters to various DOCS officials appealing his removal from the TRP, Gutierrez received a notice from King, dated May 31, 2005, stating that his removal from the program had been upheld. Joy also sent a second letter to Gutierrez, dated June 6, 2005, notifying Gutierrez that removal had been upheld and stating that he would "not be restored to Temporary Release Participation." (Letter of Debra R. Joy, dated June 6, 2005, attached as Ex. 11 to Pl. Aff.)

Over one year later, on June 27, 2006, DOCS Deputy Inspector General Kenneth Torreggiani ("Torreggiani") recommended that Gutierrez, still at Fishkill, be placed in Administrative Segregation. Torreggiani averred that Gutierrez was suspected of "being involved in the January 11th, 2005 homicide of Edward Meran." (Form 2168, dated June 27, 2006 ("Recommendation"), attached as Ex. 12 to Pl. Aff.) It was for this reason that Gutierrez had been removed from participation in the TRP and transferred to Fishkill. The Recommendation also stated that Gutierrez was believed to have organized the distribution of narcotics in Manhattan while imprisoned at Fishkill. It was from the Recommendation that Gutierrez was first apprised of the reason for his removal from the TRP.

Based on the Recommendation and confidential testimony of Torreggiani at a Tier III Segregation Recommendation Hearing, which was held on July 6 and 10, 2006, Gutierrez was placed in Administrative Segregation. He remained there until March 12, 2007, at which point he was released. To date, Gutierrez has not been charged in the murder of Edward Meran nor in connection with the allegations of narcotics distribution during his time at Fishkill.

Gutierrez filed his complaint on June 18, 2005, after being removed from the TRP but before being placed in Administrative Segregation. The complaint contains claims, brought pursuant to § 1983, that Defendants denied him his Fourteenth Amendment due process rights. Gutierrez alleges that the conduct of Defendants in removing him from TRP participation was contrary to the rules and procedures set

forth in DOCS regulations, codified in Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York, Sections 1904.1 and 1904.2 (" § 1904.1" and " § 1904.2"). *See* 7 N.Y.C.R.R. §§ 1904.1 and 1904.2. Gutierrez seeks (1) a declaratory judgment that his civil rights were violated by Defendants in removing him from the TRP; (2) injunctive relief, directing Defendants to reinstate him to participation in the TRP and enjoining them from again removing him from the program; (3) a declaratory judgment that the administrative practices relative to TRP removal are unconstitutional; and (4) compensatory and punitive damages. Defendants moved for summary judgment, asserting that: (1) Gutierrez failed to state a denial of due process claim; (2) Defendants are entitled to qualified immunity; and (3) Defendants are entitled to Eleventh Amendment immunity on Gutierrez's claim for monetary damages against them in their official capacities.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The moving party bears the burden of proving that no genuine issue of material fact exists or that by reason of the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994).

In the case of a pro se litigant a court is instructed to read the pleadings leniently and to construe them to raise "the strongest arguments that they suggest." *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (*quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

### B. *GUTIERREZ'S DUE PROCESS CLAIM*

Defendants argue that they are entitled to summary judgment because the facts fail to establish that they deprived Gutierrez of due process. In short, Defendants claim that Gutierrez was afforded the minimal due process to which he was entitled.

While an enforceable liberty interest to begin participation in the TRP may not exist, the Second Circuit has made it clear that such an interest does exist in *continued* participation in the TRP. *See Anderson v. Recore,* 446 F.3d 324, 328 (2d Cir.2006); *Friedl v. City of New York,* 210 F.3d 79, 84 (2d Cir.2000); *Kim v. Hurston,* 182 F.3d 113, 118 (2d Cir.1999). The cases cited by Defendants are not to the contrary, but simply establish that there is no constitutional right to be admitted to a temporary release program. *See, e.g., Dudley v. Coombe,* No. 96 Civ. 1665, 1997 WL 423074, at *3 (S.D.N.Y. July 28, 1997); *Ahlers v. Recore,* No. 95 Civ. 4338, 1996 WL 406782, at *4 (E.D.N.Y. July 3, 1996).

Due process requires that a hearing be held "before inmates already participating in or approved for the temporary release program may be removed." *Anderson v. Recore,* 446 F.3d at 328 (*quot-*

*ing Tracy v. Salamack,* 572 F.2d 393, 396 (2d Cir.1978)). In *Young v. Harper,* a case involving a pre-parole program similar to the TRP, the Supreme Court held that such a pre-deprivation hearing should provide procedures similar to those set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *See* 520 U.S. 143, 152–53, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997). These procedures entail the following provisions:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Anderson v. Recore,* 446 F.3d at 329 (*quoting Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593); *see also Friedl,* 210 F.3d at 85.

The TRP removal procedures comport with this mandate. Section 1904.2(h)[3] details the required procedures to be followed by the TRC upon review of an inmate's continued participation in the TRP. A "full hearing to ensure the inmate has been afforded due process" must be held, with certain procedures to be followed:

(1) An inmate should be provided with a notice of specific reasons for the referral at least 24 hours prior to the temporary release committee meeting . . . .

(2) The inmate shall make a personal appearance before a temporary release committee unless he or she refuses to attend, or is excluded for reasons of institutional safety or correctional goals.

(3) An electronic recording of the entire hearing shall be made.

(4) An opportunity for an inmate to request an inmate assistant if the . . . the issues are complex [or] the inmate is "keeplocked" or in SHU [Special Housing Unit] and unable to prepare a defense . . . .

(5) An opportunity for the inmate to call witnesses and to proffer questions to be asked of witnesses called.

(6) An opportunity to reply and produce documentary evidence.

(7) A written statement setting forth the decision and the evidence relied on, following the superintendent's review of the temporary release committee's recommendation . . . .

(8) Form 4187 must then be completed and a copy kept on file.

7 N.Y.C.R.R. § 1904.2(h).

▪ The evidence before the Court on the motion before it suggests that many of these procedures were not followed by Defendants. Most importantly, Gutierrez was not notified of "the specific reasons for the referral at least 24 hours prior" to the TRC hearing, but rather was informed of the outcome several days after it took place. *See id.* at § 1904.2(h)(1). Since he was absent from the hearing, Gutierrez had no chance to reply to the charges

---

**3.** Prior to amendments that took effect in September 2006, § 1904.2(h) was § 1904.2(1). The amendments caused several subsections to be abrogated and several of the remaining subsections, the former § 1904.2(1) included, to be relettered. While the pre-amendment provisions were in force at the time Gutierrez was removed from the TRP, there were no material changes to the text of the regulations pertinent to the issues of this case.

against him, nor was he allowed to produce evidence and call witnesses on his behalf. *See id.* at § 1904.2(h)(2), (5). The procedures followed by Defendants appear to. not be in accord with DOCS regulations.

■ Defendants advance two arguments as to why their failure to follow the procedures of § 1904.2(h) does not constitute a deprivation of due process. First,· they contend that their actions were justified by an "emergency" situation threatening institutional safety. In essence, their claim is that the investigation of Gutierrez presented an extraordinary circumstance so urgent as to require Gutierrez's immediate transfer to another facility and a hearing *in absentia.* Second, Defendants claim that Gutierrez was not prejudiced by his absence from the TRC hearing because the investigation was confidential and he was not entitled to any details regarding it. Thus, according to Defendants, Gutierrez's presence at the TRC hearing could not possibly have changed the result.

■ Under DOCS' regulations, it is true that "an inmate who is considered a security risk may be immediately transferred to a more secure correctional facility prior to . . . an appearance before the [TRC]" under certain circumstances. 7 N.Y.C.R.R. § 1904.2(c). However, a hearing must still be held to allow the inmate an opportunity to be heard and argue for reinstatement. As the Second Circuit noted in *Kim,* "[A]lthough the emergency justified the immediate physical removal, [the inmate is] entitled thereafter to a hearing to dispute the ground that was alleged to exist for that removal and to know the reason for it." 182 F.3d at 119.

■ Gutierrez was provided with no such opportunity. Even assuming, without deciding, that the investigation constituted a special circumstance necessitating the immediate transfer of Gutierrez to Fishkill, Defendants have put forth no justification for not providing Gutierrez with a full

hearing soon after his transfer. The Court is not persuaded that because an inmate in custody is under investigation warrants the denial of an opportunity "to dispute the ground that was alleged to exist for that removal and to know the reason for it." *Id.* A proceeding held in Gutierrez's absence, in which his liberty interest was at stake, without an opportunity for him to speak on his own behalf, cannot be said to fulfill the requirements of·fairness and due process.

■ Furthermore, Gutierrez was in fact prejudiced when he was not permitted to attend the hearing regarding his status in the TRP. The TRC had discretion, even in light of the evidence regarding the investigation presented to it, to recommend either Gutierrez's removal from the TRP or his continued participation in that program. Like a parole hearing, a TRC hearing has a dual purpose: "[1] to adjudicate facts and [2] to determine whether, on the basis of those facts, a certain consequence should follow." *Anderson v. Recore,* 446 F.3d at 330 (*citing Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)). As the Second Circuit has noted, "the regulation [§ 1904.1(b) ] that specifically governs revocation of, rather than eligibility ·for, temporary release does not indicate that a serious disciplinary infraction automatically disqualifies a participant." *Id.* at 331; *see* 7 N.Y.C.R.R. § 1904.1(b) ("[A] superintendent *may* revoke an inmate's participation" in the TRP.) (emphasis added). Therefore, even if the facts of the case were undisputed and made it clear that Gutierrez violated TRP regulations, the TRC nonetheless retained discretion to recommend that he not be removed from the TRP. *See Anderson v. Recore,* 446 F.3d at 331–32 ("The regulations at issue . . . do not indicate that the TRC must recommend that an inmate be removed from a program once he no long-

er meets requirements for entrance into the program."); *see also Severino v. Negron,* 996 F.2d 1439 (2d Cir.1993).

Thus, the Court finds unpersuasive Defendants' claim that "[Gutierrez] cannot argue that his failure to be present at the hearing prejudiced him under the existing circumstances because the subject matter of the investigation was confidential and he could not have been provided additional details." (Defs. Mem. at 19.) The TRC, had it found it appropriate, could have recommended that Gutierrez not be removed from the TRP despite the ongoing investigation. Since the TRC had this discretion, due process required Gutierrez to be given an opportunity to present reasons why he should not be removed from the TRP.

■■■ The notice Gutierrez received after the hearing does not cure the deprivation of due process resulting from his absence from the hearing. The short letter sent to him by Joy on April 8, 2005 informing him that he had been removed from the TRP by reason of the investigation was simply a notice of the TRC's decision. Receipt of that letter or any subsequent letter did not afford Gutierrez the ability to dispute before the TRC the claims against him pertaining to his violation of TRP rules. That Gutierrez was informed "early on that he had been removed from the TRP" does not, contrary to the Defendants' assertion, fulfill the requirements of § 1904.2(h), nor those of due process. (*See* Defs. Reply Mem. at 5; Defs. Mem. at 17.)

■■■ The Court also notes that the substance of notice provided to Gutierrez regarding his removal falls short of the requirements of due process. As the Second Circuit explained in *Sira v. Morton,* "the notice required by due process is no empty formality." 380 F.3d 57, 70 (2d Cir.2004). Notice "serves to 'compel the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges.'" *Id.* (*quoting Taylor v. Rodriguez,* 238 F.3d 188, 192–93 (2d Cir.2001)); *see also McKinnon v. Patterson,* 568 F.2d 930, 940 n. 11 (2d Cir. 1977).

■■■ It is certainly true that "the law recognizes that legitimate concerns for inmate safety may sometimes require confidential proceedings." *Sira,* 380 F.3d at 70 (*citing Wolff v. McDonnell,* 418 U.S. 539, 566–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Nonetheless, the inmate "must receive notice of at least some 'specific facts' underlying the accusation," beyond mere "vague or conclusory" statements. *Id.* (*quoting Taylor,* 238 F.3d at 193). The efforts of Defendants, in repeatedly advising Gutierrez that he was under investigation, appears to fall short of this requirement. Thus, even if such notification had been timely provided, it would not have afforded Gutierrez due process.

Defendants, in order to satisfy the requirements of due process, had to provide Gutierrez with notice of the charges against him prior to the TRC hearing on the underlying violation. They also had to allow Gutierrez to appear at that hearing in order to defend himself and attempt to persuade the TRC to recommend his continued participation. The evidence before the Court does not tend to establish that there is "no genuine issue of material fact" with respect to the determination of whether these requirements were met. Thus, Gutierrez has, in fact, presented a viable due process claim, and Defendants are not entitled to summary judgment on their first-asserted ground.

## C. QUALIFIED IMMUNITY

■■■ The doctrine of qualified immunity shields government officials per-

forming discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Anderson v. Recore,* 446 F.3d at 333; *Morris–Hayes v. Bd. of Educ.,* 423 F.3d 153, 158 (2d Cir.2005); *Ayers v. Ryan,* 152 F.3d 77, 82 (2d Cir.1998). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Summary judgment may be granted on this ground if the defendant shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it. *See Ayers,* 152 F.3d at 82.

Defendants argue that the Supreme Court's decision in *Sandin v. Conner* obscured the contours of Gutierrez's due process rights to the point where it was not clearly established that he was entitled to a hearing prior to removal from the TRP. In that case, the Court held that the placement of an inmate in segregated confinement as a disciplinary measure did not implicate a protected liberty interest requiring due process before the inmate could be so placed. *See* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As noted above, several courts in this district have found support in *Sandin* in ruling that inmates did not have a protected liberty interest in initial eligibility for temporary release. *See, e.g., Dudley,* 1997 WL 423074, at *3; *Ahlers,* 1996 WL 406782, at *4.

However, also as noted above, the Second Circuit has repeatedly and emphatically ruled that inmates do have a protected liberty interest in continued participation in the TRP once they have been accepted into the program. *See Anderson v. Recore,* 446 F.3d 324; *Friedl,* 210 F.3d 79; *Kim,* 182 F.3d 113. Moreover, the TRP removal procedures, with which a reasonable officer would be familiar, explicitly state numerous requirements that must be followed to ensure a "full hearing to ensure the inmate has been afforded due process." 7 N.Y.C.R.R. § 1904.2(h).

■ Simply put, at the time of Gutierrez's removal from the TRP, the contours of his due process rights were "sufficiently clear that a reasonable official would understand" that failing to provide Gutierrez fair notice of the charges against him prior to the TRC hearing and refusing to allow him to attend the hearing violated those rights. *See Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034.

Gutierrez's removal from the TRP is distinguishable from the removal of the inmate in *Anderson v. Recore.* There, the plaintiff was removed from the TRP following a TRC hearing of which he had no prior notice and was not allowed to attend. *See Anderson v. Recore,* 446 F.3d at 326. The defendants were found to be entitled to qualified immunity taking into account that the plaintiff had serious disciplinary charges against him sustained in a prior administrative hearing (unrelated to the TRP), where the plaintiff received notice of the charges against him and the opportunity to be heard in opposition. The Court of Appeals held that a reasonable official could have believed that "no further hearing was necessary" even though DOCS regulations do not compel removal upon misbehavior charges being sustained. *Id.* at 334.

While Gutierrez was confined at another facility because of the charges against him, at no point did he have a hearing regarding those charges. He did not have the

opportunity to rebut the claims made against him until over a year following his removal from the TRP. The Court is not persuaded that a reasonable official could have believed that Gutierrez had been afforded due process when he was denied notice of the charges against him and an opportunity to be heard for approximately 15 months following his removal.

In sum, Defendants have not established that they are entitled to qualified immunity, as Gutierrez's right to due process was clearly established and it was not objectively reasonable for Defendants to believe their conduct did not violate that right. Summary judgment on this ground is also inappropriate.

## D. *ELEVENTH AMENDMENT IMMUNITY*

 The Eleventh Amendment bars a suit by a citizen of a state against that state or one of its agencies, absent the state's consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). It is well established that Congress did not intend to abrogate this immunity of the states in enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 343, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). However, while "the Eleventh Amendment bars recovery against an employee who is sued in his official capacity, [it] does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity." *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988) (*citing Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

 To the extent that Gutierrez is suing Defendants in their official capacities to recover monetary damages, his claims are barred by the Eleventh Amendment. *See Graham*, 473 U.S. at 169, 105 S.Ct. 3099 (holding that a claim for damages against State officials in their official capacity is a claim against the State and is therefore barred by the Eleventh Amendment); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir.2002) (holding that a prisoner's § 1983 claims for damages against individual prison officials in their official capacities are barred by Eleventh Amendment); *see also Bussey v. Phillips*, 419 F.Supp.2d 569 (S.D.N.Y.2006).

 However, Gutierrez's complaint purports to make a claim against Defendants in their individual capacities. Defendants argue that the Eleventh Amendment nonetheless bars the suit, asserting that it is "the State [that] is the real substantial party in interest," not the individual defendants. *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Indeed, "a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation" to bring suit under § 1983. *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir.1998).

 As the Second Circuit explained in *Spencer*, "personal involvement" of supervisory officials is established upon demonstration of one of the following:

(1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Id.* The evidence which Gutierrez has presented, which is undisputed in the instant motion, tends to show that the Defendants were each personally involved in the depri-

vation of Gutierrez's right to due process. (*See* Compl. at 8–10.)

Thus, while the Eleventh Amendment bars Gutierrez from prosecuting his § 1983 action against Defendants in their official capacities, his claim for money damages, to the extent that he brings suit against Defendants in their personal and individual capacities, is not barred.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment of defendants State of New York Department of Correctional Services ("DOCS") Director of Temporary Release Programs Debra R. Joy, Temporary Release Reviewer Barbara King, and DOCS' Fulton Correctional Facility Acting Superintendent Cynthia Morton (collectively, "Defendants") is GRANTED in part and DENIED in part; the motion is GRANTED in that plaintiff Oman Gutierrez's claim for monetary damages from Defendants is dismissed to the extent that it is brought against Defendants in their official capacities; the motion is DENIED in all other respects.

**SO ORDERED.**